**No. 26-3263**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

JAN HARRIS,

*Plaintiff-Appellant*,

v.

CHARLES SCHWAB & CO, INC.,

*Defendant-Appellee*.

On Appeal from the United States District Court
for The Northern District Of California
No. 4:25-cv-00807-KAW
Hon. Kandis A. Westmore, Presiding

---

**APPELLANT OPENING BRIEF**

---

Jan Harris
*Pro Se Appellant*
101 Aupuni Street, Apt. 420
Hilo, Hawaii 96720
(541) 207-4026

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........................................ ii
INTRODUCTION ........................................ 1
a. Rule 15c3-3 Trusts ........................................ 1
JURISDICTIONAL STATEMENT ........................................ 2
ISSUES PRESENTED ........................................ 3
STATUTORY AUTHORITIES ........................................ 3
STATEMENT OF THE CASE ........................................ 3
SUMMARY OF THE ARGUMENT ........................................ 6
STANDARD OF REVIEW ........................................ 7
ARGUMENT ........................................ 8
a. The Federal Common Law Of Trusts ........................................ 9
b. The 1934 Exchange Act ........................................ 12
c. Rule 15c3-3 Trust ........................................ 14
d. Statute Of Limitations ........................................ 19
1. My Absolute Right To Hold My Property Free Of Trust. ........................................ 24
2. My Federal Breach Of Fiduciary Duty Claims ........................................ 30
e. Defendant Is Not A Victim Of Vexatious Litigation. ........................................ 32
f. Claim Preclusion. ........................................ 36
1. The Historical Powers Of Courts Of Equity. ........................................ 37
g. Issue Preclusion. ........................................ 40
1. A DTC Global Lock. ........................................ 41
h. My § 1367 Supplemental California Trust Claims. ........................................ 42
i. The Court Erred Taking Judicial Notice Of Item No.12 ........................................ 44
CONCLUSION ........................................ 48
CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Federal Cases**

*American Prairie Const. Co. v. Hoich*,
560 F. 3d 780 (8th Cir. 2009). .......... 44
*Astoria Fed. Sav. & Loan Ass'n v. Solimino*,
501 U.S. 104 (1991). .......... 9
*Banks v. Northern Trust Corp.*,
929 F. 3d 1046 (9th Cir. 2019) .......... 44
*Barboza v. California Ass'n of Prof. Firefighters*,
799 F.3d 1257 (9th Cir. 2015). .......... 10, 15, 26
*Begier v. IRS*,
496 U.S. 53 (1990). .......... 16, 17
*Bishop Paiute Tribe v. Inyo County*,
863 F. 3d 1144 (9th Cir. 2017). .......... 12
*Blair v. Commissioner*,
300 U.S. 5 (1937) .......... 18
*Boulder Fruit & Heger Farm v. Transp. Fact*,
251 F. 3d 1268 (9th Cir. 2001) .......... 31
*Bullard v. City of Cisco*,
290 U.S. 179 (1933) .......... 15
*Cabrera v. City of Huntington Park*,
159 F. 3d 374 (9th Cir. 1998). .......... 8
*Cigna Corp. v. Amara*,
563 U.S. 421 (2011) .......... 26, 38
*Clarke v. Boorman's Executors*,
85 U.S. 493 (1874) .......... 25

**Federal Cases cont.**

*Clark v. Bear Stearns & Co., Inc.*,
966 F. 2d 1318 (9th Cir. 1992) .......................................................11, 40

*Cobell v. Kempthorne*,
569 F. Supp. 2d 223 (D.D.C. 2008).......................................................26

*Cobell v. Norton*,
240 F. 3d 1081 (D.C. Cir. 2001)...........................................................30

*Community for Creative Non-Violence v. Reid*,
490 U.S. 730 (1989) ...........................................................................9

*Colton v. Colton*,
127 U.S. 300 (1888) ......................................................................14, 15

*Cyan, Inc. v. Beaver County Employees*,
583 U.S. 416 (2018). .........................................................................12

*Fletcher v. US*,
730 F.3d 1206 (10th Cir. 2013) ............................................................11

*Garrett v. First Nat. Bank & Trust Co.*,
153 F. 2d 289 (5th Cir. 1946) ...............................................................29

*Guaranty Trust Co. v. York*,
326 U.S. 99 (1945) ............................................................................10

*Guzman v. Polaris Industries, Inc.*,
49 F. 4th 1308 (9th Cir. 2022) ........................................................37, 42

*Harris v. TD Ameritrade*,
No. 20-1960 (2d Cir. Mar. 1, 2021) ............................................... ER-71

*Harris v. TD Ameritrade*,
No. 22-1968 (2d Cir. May 10, 2023).............................................. ER-63

*He Depu v. Oath Holdings, Inc.*,
531 F. Supp. 3d 219 (D.C. 2021) ........................................................31

*Howard v. City of Coos Bay*,
871 F. 3d 1032 (9th Cir. 2017) .......................................................36, 40

**Federal Cases cont.**

*Ingram v. Lewis*,
37 F. 2d 259 (10th Cir. 1930) ..................................................................29

*In re Columbia Gas Systems Inc.*,
997 F.2d 1039 (3d Cir. 1993) ..................................................................11

*In re Hamilton Taft & Co.*,
53 F. 3d 285 (9th Cir. 1995). ..................................................................18

*In re Hemmeter*,
242 F. 3d 1186 (9th Cir. 2001) ................................................................15

*Jo Ann Howard And Associates, PC v. Cassity*,
868 F.3d 637 (8th Cir. 2017). ..................................................................31

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F. 3d 988 (9th Cir. 2018). .............................................................7, 8

*King v. Blue Cross and Blue Shield of Illinois*,
871 F. 3d 730 (9th Cir. 2017). .............................................................7, 8

*Lee v. City of Los Angeles*,
250 F. 3d 668 (9th Cir. 2001) ..................................................................44

*Lessee of Smith v. McCann*,
65 U.S. 398 (1861) ..................................................................................26

*Lewis v. Hawkins*,
90 U.S. 119 (1875) ..................................................................................25

*Long Island Sav. Bank, FSB v. United States*,
503 F.3d 1234 (Fed. Cir. 2007) ..................................................................9

*Media Rights Technologies, Inc. v. Microsoft Corp.*,
922 F. 3d 1014 (9th Cir. 2019) ................................................................36

*Mertens v. Hewitt Assocs.*,
508 U.S. 248 (1993) ................................................................................26

*Montana v. United States*,
440 U.S. 147 (1979).. ..............................................................................36

**Federal Cases cont.**

*National Farmers Union Ins. Cos. v. Crow Tribe*,
471 U.S. 845 (1985). .......... 12

*New Orleans v. Warner*,
175 U.S. 120 (1899).. .......... 25

*Oliver v. Piatt*,
44 U.S. 333 (1845) .......... 25

*Orr v. Bank Of America, NT & SA*,
285 F. 3d 764 (9th Cir. 2002) .......... 8

*Packard v. Provident Nat. Bank*,
994 F.2d 1039 (3d Cir. 1993). .......... 31

*Pauma Band of Luiseno Mission Indians of Pauma & Yuima Reservation v. California*,
813 F.3d 1155 (9th Cir. 2015) .......... 9

*Philippi v. Philippe*,
115 U.S. 151 (1885) .......... 25

*Prevost v. Gratz*,
19 U.S. 481 (1821) .......... 25

*Robinson v. Campbell*,
16 U.S. 212 (1818) .......... 9, 11

*SIPC v. Barbour*,
421 U.S. 412 (1975) .......... 13

*Sonner v. Premier Nutrition Corp.*,
971 F. 3d 834 (9th Cir. 2020) .......... 11

*Speidel v. Henrici*,
120 U.S. 377 (1887). .......... 25

*Stainback v. Mo Hock Ke Lok Po*,
336 U.S. 368 (1949) .......... 37

**Federal Cases cont.**

*State of Penn. v. The Wheeling & C. Bridge Co. Et Al.*,
54 U.S. 518 (1852) .......... 10

*Tafflin v. Levitt*,
493 U.S. 455 (1990). .......... 12

*Twist v. Prairie Oil & Gas Co.*,
274 U.S. 684 (1927) .......... 37

*United States v. Texas*,
507 U.S. 529 (1993). .......... 9

*US Term Limits, Inc. v. Thornton*,
514 U.S. 779 (1995) .......... 11

*Warmenhoven v. NetApp, Inc.*,
13 F. 4th 717 (9th Cir. 2021) .......... 31

*Wheeler v. Smith*,
50 U.S. 55 (1850). .......... 11

**California State Cases**

*Estate of de Laveaga*,
50 Cal. 2d 480 (1958) .......... 43, 44

*Love v. Watkins*,
40 Cal. 547 (1871) .......... 43

*Luco v. De Toro*,
91 Cal. 405 (1891) .......... 43

*Vandenberg v. Superior Court*,
21 Cal. 4th 815 (1999). .......... 34

**U.S. Statutes**


15 U.S.C. § 78a et seq. [1934 Exchange Act] ....................................*passim*

15 U.S.C. § 78o(c)(3) (Section 15c3)........................1, 6, 7, 8, 13, 14, 16, 17

15 U.S.C. § 78aa (Section 27) ..........................................................2, 12

15 U.S.C. § 78bb (Section 28)..........................................................18, 42

28 U.S.C. § 1291 ..............................................................................2

28 U.S.C. § 1331 ..........................................................................2, 12

28 U.S.C. § 1367 ........................................................................42, 43


**Rules and Regulations**


17 C.F.R. § 240.15c3-3, SEC Rule 15c3-3 ........................................*passim*


**SEC Administrative**


Exchange Act Rel. No. 34-9856 (Nov. 10, 1972) (Rule 15c3-3),
37 FR 25224 (Nov. 29, 1972) .........................................................14

Exchange Act Rel. No. 34-79488 (Dec. 6, 2016) (DTC global lock Rule),
81 FR 89533 (Dec.12, 2016) ..............................................................41


**Treatise And Restatements**


Restatement (Second) of Trusts (1957, 1959)..........14, 15, 18, 26, 27, 31, 35

Restatement (Third) of Trusts (2007, 2012) .................14, 15, 16, 26, 27, 35

Bogert, Handbook of the Law of Trusts (1921) ...................................16, 37

Bogert, The Law of Trusts and Trustees (1995) .......................26, 27, 28, 29

A.W. Scott & W.F. Fratcher, Trusts ..................................16, 26, 31, 37, 38

Story, Commentaries on Equity Jurisprudence ..................................14, 26


**Other**


Securities Investor Protection Act of 1970,
Pub. L. No. 91-598, 84 Stat. 1636 (1970) .....................................1, 6, 13

## INTRODUCTION

### a. Rule 15c3-3 Trusts

I am appealing the district court's dismissal of my trust claims. In section 7(d) of the 1970 SIPA Act Congress amended section 15(c)(3) of the 1934 Exchange Act and defined the subject of a trust, (i.e. the trust *res*) and directed the Securities and Exchange Commission (SEC) to prescribe rules and regulations governing a stockbroker's administration of the trust. *See* 15 U.S.C. § 78o(c)(3). In response the SEC enacted Exchange Act Rule 15c3-3 (The Customer Protection Rule) which creates a "securities account" to hold the *res* of the trust, and imposes on the "carrying" stockbroker administrative responsibilities typically associated with a trustee.

> The term ***securities account*** shall mean an account that is maintained in accordance with the requirements of section 15(c)(3) of the Act (15 U.S.C. 78o(c)(3)) and § 240.15c3-3.

17 C.F.R. § 240.15c3-3(a)(14) (emphasis in the original).

The moment an Exchange Act Rule 15c3-3 "securities account" is funded, it passes the Ninth Circuit's test for a statute based express trust (Rule 15c3-3 trust). The Ninth Circuit however, has never ruled on whether a funded Exchange Act Rule 15c3-3 "securities account" is (or is not) an express trust.

I am requesting the Ninth Circuit rule on whether my Exchange Act Rule 15c3-3 securities account no. xxxx-6593 is (or is not) an express trust. It matters because if securities account no. xxxx-6593 is an express trust, then the dismissal of my claims to enforce the trust, enjoin a breach of trust, and obtain redress for breach of trust was in error. Under federal trust law (as interpreted by the U.S. Supreme Court), in actions by *cestuis qui trust* against an express trustee, the rule is that a statute of limitations has no application on actions to enforce the trust until after the trust terminates.

## JURISDICTIONAL STATEMENT

The district court had federal question jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 78aa to hear my Rule 15c3-3 trust claims and my § 10(b) securities fraud claims. This Court has jurisdiction under 28 U.S.C. § 1291 as this is an appeal of a final judgment. The district court issued final judgment on March 5, 2026, [ER-7]. I filed a Rule 59(e) motion for reconsideration on March 13, 2026 which the district court denied on May 7, 2026, [ER-4]. I filed my notice of appeal on May 17, 2026, [ER-83]. My notice of appeal is timely under Fed. R. App. P. 4(a)(4)(A)(4).

## ISSUES PRESENTED

- Whether my Exchange Act Rule 15c3-3 securities account no. xxxx-6593 is (or is not) an express trust.
- Whether a statute of limitation or lapse of time affects my right to enforce my Rule 15c3-3 express trust.
- Whether a statute of limitation, lapse of time, or previous litigation affects my absolute right to hold my property (funds and securities) in Exchange Act Rule 15c3-3 securities account no. xxxx-6593 free of trust.
- Whether the district court abused its discretion taking judicial notice of Item No. 12.

## STATUTORY AUTHORITIES

The relevant statutes and regulations are located in the separately filed Addendum.

## STATEMENT OF THE CASE

In January 2025 I filed a Complaint in the U.S. Federal District Court for the Northern District of California to obtain an order from the court directing defendant Charles Schwab & Co. distribute to me the entire contents of Exchange Act Rule 15c3-3 securities account No. xxxx-6593. I alleged in my complaint that my Exchange Act Rule 15c3-3 "securities accounts" are express trusts; that defendant Charles Schwab & Co. (a California corporation) is the current trustee for my Exchange Act Rule 15c3-3 "securities accounts" (Rule 15c3-3 trusts);

and that defendant Charles Schwab & Co. is breaching its trust by, among other things, not responding to my request for information about the status of my assets held in my "securities accounts" and by not accounting for and distributing to me my property in Exchange Act Rule 15c3-3 securities Account No. xxxx-6593. In addition to my Rule 15c3-3 trust claims, I alleged standalone §10(b) securities fraud claims based on the monthly account statements (digital documents) defendant Charles Schwab & Co. is creating and providing to me on its internet website that I believe misrepresent the status of my assets (funds and securities) in my Exchange Act Rule 15c3-3 "securities accounts". (Dkt. No. 1) [ER-27].

On June 13, 2025, defendant filed: (1) a motion to dismiss or in the alternative compel arbitration, (Dkt. No. 12); (2) a request for judicial notice (Dkt. No. 13) [ER-22]; and (3) a motion to declare me a vexatious litigant, (Dkt. No. 14).

On June 16, 2025 I offered to dismiss the case if defendant Charles Schwab & Co. would distribute to me all the property in Exchange Act Rule 15c3-3 securities Account No. xxxx-6593, (Dkt. No. 15-7; Dkt. No. 15-8). Defendant did not respond to my offer.

On June 20, 2025, I filed: (1) an opposition to defendant's motion to dismiss or compel arbitration, (Dkt. No. 15); (2) a response to defendant's request for judicial notice, (Dkt. No. 16); and (3) an objection to defendant's vexatious litigant motion, (Dkt. No. 17).

On July 7, 2025, defendant filed replies. (Dkt. No. 18; Dkt. No. 19; Dkt. No. 20.

On March 5, 2026, the district court issued: (1) an Order dismissing all the claims in my complaint as untimely, accusing me of, among other things, attempting to relitigate stale claims and dressings up stale claims as securities violations.(Dkt. No. 35) [ER-8]; (2) an Order terminating as moot defendant's motion to declare me a vexatious litigant (Dkt. No. 36); and (3) Judgment in favor of Defendant (Dkt. No. 37) [ER-7].

On March 13, 2026, I filed a Motion for Reconsideration and attached a Proposed Amended Complaint. (Dkt. No. 39). My Proposed Amended Complaint (PAC) pleads only trust claims and prays for 1.) "An order directing Charles Schwab & Co. account for and distribute to me my property in securities Account No. xxxx-6593, and 2.) "other or additional relief to make me whole and as is just and proper." (Dkt. No. 39 at ECF pp.28-32) [ER-16-21].

On March 31, 2026, defendant filed an opposition.

On April 6, 2026, I filed a reply. (Dkt. No. 42)

On May 7, 2026 the district court denied my Motion for Reconsideration. (Dkt. No 46) [ER-4].

I timely appealed. (Dkt. No. 47, Notice of Appeal) [ER-83].

## SUMMARY OF THE ARGUMENT

I am appealing the district court's dismissal of my trust claims. In § 7(d) of the Securities Investor Protection Act of 1970 (1970 SIPA Act), Congress amended section 15(c)(3) of the 1934 Exchange Act and defined the subject of a trust, (i.e. the trust *res*) and directed the Securities and Exchange Commission (SEC) to prescribe rules and regulations governing a stockbroker's administration of the trust. The SEC complied by promulgating Exchange Act Rule 15c3-3, (The Customer Protection Rule) codified as 17 C.F.R. § 240.15c3-3.

Exchange Act Rule 15c3-3 delineates the terms of a portable, revocable, standardized express trust stockbrokers must use to hold a retail investor's property (funds and securities). As Congress intended, an express trust (Rule 15c3-3 trust) governed by federal law comes into existence the moment the retail investor funds her Exchange Act Rule 15c3-3 "securities account".

Although federal trust law and state trust law have common ancestry, federal trust law is legally distinct from state trust law, and the trust law of one State is not the law of another. Nowhere in § 15(c)(3) of the 1934 Exchange Act does Congress alter settled federal law that equity has exclusive jurisdiction of trusts, or alter settled federal law that while an express trust is in existence, as between trustee and *cestui que trust*, the statute of limitations has no application, and no length of time bars the *cestui que trust* from bringing a suit in equity to enforce the terms of the Rule 15c3-3 trust, enjoin a breach of trust, and obtain redress for a breach of trust.

My absolute right to hold my property free of trust is found in federal trust law (right of *cestui que trust*), property law (incident of equitable ownership), and the terms of the Rule 15c3-3 trust.

## STANDARD OF REVIEW

A district court's decision to grant a motion to dismiss pursuant to Rule 12(b)(6) is reviewed de novo. *Khoja v. Orexigen Therapeutic*s, Inc., 899 F. 3d 988, 998 (9th Cir. 2018). The interpretation of a federal statute is reviewed de novo. *King v. Blue Cross and Blue Shield of Illinois*, 871 F. 3d 730, 739 (9th Cir. 2017). "Whether a claim is barred by the applicable statute of limitations is reviewed de novo. When the

statute of limitations begins to run is a question of law also reviewed de novo." *Orr v. Bank Of America*, NT & SA, 285 F. 3d 764, 779-780 (9th Cir. 2002) (internal citation omitted). "With respect to the breach of fiduciary duty claims, the court must determine . . . whether the district court correctly applied the relevant substantive law". *King*, 871 F. 3d 730, 739. Whether a claim is barred by res judicata is reviewed de novo. *Cabrera v. City of Huntington Park*, 159 F. 3d 374, 381 (9th Cir. 1998). The decision to take judicial notice is reviewed for an abuse of discretion. *Khoja*, 899 F. 3d 988, 998.

## **ARGUMENT**.

The subject of my complaint is my Exchange Act Rule 15c3-3 "securities accounts" *See* Dkt. No. 1 at pp. 1-2 (Preliminary Statement); [ER-27-28.]. Dkt. No. 1 at ¶ 14 [ER-29]:

> The term ***securities account*** shall mean an account that is maintained in accordance with the requirements of section 15(c)(3) of the Act (15 U.S.C. 78o(c)(3)) and § 240.15c3-3.

17 C.F.R. § 240.15c3-3(a)(14) (emphasis in the original).

The object of my trust claims is to obtain a final accounting and enforce my absolute right to hold the contents of securities account No. xxxx-6593 free of trust. (*See* Dkt. No. 1 at p. 20 (relief requested) [ER-46] & Dkt. No. 39 (PAC relief requested) [ER-21].

**a. The Federal Common Law Of Trusts.**

"Congress does not write upon a clean slate." *U.S. v. Texas*, 507 U.S. 529, 534 (1993). Federal courts may take it as a given that Congress has legislated against the background of common law principles. *See Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991). The background common law principles Congress legislated against in the beginning were those of late 18th century England.[1] Over time, the continuous application of English common law principles by federal courts developed a body of federal common law.[2] Federal common law includes the common law of chancery

---

1 *Robinson v. Campbell*, 16 U.S. 212, 105 (1818) ("The court, therefore, think, that to effectuate the purposes of the legislature, the remedies in the courts of the United States are to be, at common law or in equity, not according to the practice of state courts, but according to the principles of common law and equity, as distinguished and defined in that country from which we derive our knowledge of those principles.").

2 *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 740 (1989) (when interpreting federal employment statutes, "we have relied on the general common law of agency, rather than on the law of any particular State, to give meaning to these terms."); *Long Island Sav. Bank, FSB v. United States*, 503 F.3d 1234, 1245 (Fed. Cir. 2007) (indicating that "[t]he Restatement of Contracts reflects many of the contract principles of federal common law"); *Pauma Band of Luiseno Mission Indians of Pauma & Yuima Reservation v. California*, 813 F.3d 1155, 1163 (9th Cir. 2015) (courts "often look to the Restatement when deciding questions of federal common law").

inherited from late 18th century English High Court of Chancery.[3] The common law of chancery includes trusts. The use of trusts is deeply rooted in the American legal system. The property rule behind trusts is that the perfect ownership of property can be decomposed into its constituent elements of legal title and equitable title, which can be vested in different persons at the same time. The law of trusts as it stood in late 18th century England is the substantive law of trusts recognized by the U.S. government.[4] Although federal trust law and most state trust law are derived from the law of trusts established by the late 18th century English Court of Chancery,[5] federal trust law is legally distinct from state trust law, and the law of one State is not the

---

[3] *State of Penn. v. The Wheeling & C. Bridge Co. Et Al.*, 54 U.S. 518, 563 (1852) ("The rules of the High Court of Chancery of England have been adopted by the courts of the United States. . . . This may be said to be the common law of chancery, and since the organization of the government, it has been observed.").

[4] *Guaranty Trust Co. v. York*, 326 U.S. 99, 105 (1945) ("From the beginning there has been a good deal of talk in the cases that federal equity is a separate legal system. And so it is, properly understood. The suits in equity of which the federal courts have had 'cognizance' ever since 1789 constituted the body of law which had been transplanted to this country from the English Court of Chancery.").

[5] *Barboza v. California Ass'n of Prof. Firefighters*,799 F.3d 1257, 1264-65 (9th Cir. 2015) (surveying origins of American trust law.).

law of another.[6] Some state legislatures codified their law of trusts, but Congress never has. The federal law of trusts continues to exist as non-statutory federal law, and is part of the body of non-statutory federal common law against which Congress legislates and federal courts adjudicate.[7]

---

[6] *Robinson v. Campbell*, 16 U.S. 212, 105 (1818) ("In some states in the Union, no court of chancery exists, to administer equitable relief. In some of those states, courts of law recognise and enforce, in suits at law, all the equitable claims and rights which a court of equity would recognise and enforce; in others, all relief is denied, and such equitable claims and rights are to be considered as mere nullities, at law."); *Wheeler v. Smith*, 50 U.S. 55, 78 (1850) ("[W]hat may be the common law of one State is not necessarily the common law of any other."); *Clark v. Bear Stearns & Co., Inc.*, 966 F. 2d 1318, 1322 (9th Cir. 1992) ("[New York and California common law] are as different as the Atlantic and the Pacific."); *US Term Limits, Inc. v. Thornton*, 514 U.S. 779, 838 (1995) (J. Kennedy, concurring) ("The Framers split the atom of sovereignty" and established two orders of government, "one state and one federal, each protected from incursion by the other.").

[7] *Sonner v. Premier Nutrition Corp.*, 971 F. 3d 834, 839 (9th Cir. 2020) ("It has long been the province of federal courts sitting in equity to apply a body of federal common law irrespective of state law."); *Fletcher v. U.S.*, 730 F. 3d 1206, 1208 (10th Cir. 2013) ("Indeed, we normally assume Congress has legislated against the background of traditional 'adjudicatory principles'—including traditional adjudicatory principles found in trust law."); *In re Columbia Gas Systems Inc.*, 997 F.2d 1039, 1051 (3d Cir. 1993) ("Federal common law, rather than state law, governs the inquiry whether Columbia holds these monies in trust.").

"[F]ederal common law can serve as the basis of federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331". *Bishop Paiute Tribe v. Inyo County*, 863 F. 3d 1144, 1147 (9th Cir. 2017). The federal common law of trusts is a "law" of the United States as that term is used in § 1331.[8] Congress may oust state courts of their concurrent jurisdiction under § 1331, *see Tafflin v. Levitt*, 493 U.S. 455 (1990).

**b. The 1934 Exchange Act**.

In the wake of the 1929 stock market crash, Congress enacted several laws to promote honest practices in the securities markets. The 1934 Exchange Act was one of them. 15 U.S.C. § 78a *et seq*. The 1934 Exchange Act regulates stockbrokers, stock exchanges, and the secondary trading of securities. "Congress determined that all [1934 Exchange Act] suits should fall within the 'exclusive jurisdiction' of the federal courts…. So a plaintiff could never go to state court to litigate a 1934 Act claim". *Cyan, Inc. v. Beaver County Employees*, 583 U.S. 416, 421-422 (2018); 15 U.S.C. § 78aa.

---

[8] *National Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845, 850 (1985) ("Federal common law as articulated in rules that are fashioned by court decisions are 'laws' as that term is used in § 1331.").

In the late 1960s and early 1970s, the securities industry experienced a backroom "paperwork crisis" which exposed the unsafe and unsound practices of stockbrokers. Congress responded by enacting the 1970 SIPA Act,[9] which addresses 1.) the misuse of customer property by solvent stockbrokers, and 2.) in the event of stockbroker insolvency, ensuring the protection of customers' property (funds and securities), and ensuring customers' have prompt access to their property.[10] Section 7(d) of the 1970 SIPA Act amended § 15(c)(3) of the 1934 Exchange Act, and directed the Securities and Exchange Commission (SEC) to prescribe rules governing stockbrokers "acceptance of custody and use of customers' securities, and the carrying and use of customers' deposits or credit balances."

---

9 Securities Investor Protection Act of 1970, Pub. L. No. 91-598, 84 Stat. 1636 (1970) (1970 SIPA Act) ("AN ACT To provide greater protection for customers of registered brokers and dealers and members of national securities exchanges."). Available at: http://www.gpo.gov/fdsys/pkg/STATUTE-84/pdf/STATUTE-84-Pg1635.pdf.

10 *SIPC v. Barbour*, 421 U.S. 412, 415 (1975) ("In addition to its disastrous effects on customer assets and investor confidence, this situation also threatened a 'domino effect' involving otherwise solvent brokers that had substantial open transactions with firms that failed. Congress enacted the SIPA to arrest this process, restore investor confidence in the capital markets, and upgrade the financial responsibility requirements for registered brokers and dealers.").

*See* 15 U.S.C. §78o(c)(3). The SEC complied by promulgating Exchange Act Rule 15c3-3, known as "The Customer Protection Rule", codified at 17 C.F.R. § 240.15c3-3; Exchange Act Rel. No. 34-9856 (Nov. 10, 1972), 37 FR 25224 (Nov. 29, 1972) (final rule).

**c. Rule 15c3-3 Trust.**

An 'express trust' is a trust that is declared in express terms (either oral or written). In an express trust relationship, there are three parties: the 'settlor' sets up the trust and transfers property to the 'trustee,' who is charged with the duty to administer the property for the benefit of the 'beneficiary'. "It is immaterial whether or not the settlor knows that the intended relationship is called a trust, and whether or not he knows the precise characteristics of the relationship which is called a trust." Restatement (Second) of Trusts § 23; Restatement (Third) of Trusts § 13.

The essential elements of a valid express trust are 'sufficient words' to raise it; a 'definite subject'; and a 'certain or ascertained object'. *See* 2 Story, Commentaries on Equity Jurisprudence § 964; *Colton v. Colton*, 127 U.S. 300, 310-12 (1888). The object of a trust is the person to whose benefit the trust property is to be applied. Any property which is capable of being legally transferred may be made

the subject of a trust (the trust *res*). Restatement (Second) of Trusts § 79 (1959). "It is not necessary to use specific words to create a trust. Rather, if the words used convey the intent to establish a trust, they will have that effect." *Barboza*, 799 F.3d 1257, 1265.

> No technical language, however, is necessary to the creation of a trust, either by deed or by will. It is not necessary to use the words "upon trust" or "trustee," if the creation of a trust is otherwise sufficiently evident. If it appear to be the intention of the parties from the whole instrument creating it that the property conveyed is to be held or dealt with for the benefit of another, a court of equity will affix to it the character of a trust, and impose corresponding duties upon the party receiving the title, if it be capable of lawful enforcement.

*Colton v. Colton*, 127 U.S. 300, 310 (1888).[11]

An Exchange Act Rule 15c3-3 "securities account" passes the Ninth Circuit's test for a statute based express trust.[12] Congress defined the subject of the trust, (i.e. the trust *res*) and directed the

---

[11] Restatement (Second) of Trusts § 24(2) (no magic words); Restatement (Third) of Trusts § 13 (no magic words); *Bullard v. City of Cisco*, 290 U.S. 179, 189 (1933) ("Although not called trustees in the agreement, they necessarily had that status by reason of the rights, powers and duties expressly assigned to them.").

[12] *In re Hemmeter*, 242 F. 3d 1186, 1190 (9th Cir. 2001) (Where the basis for the existence of a technical trust is statutory, the statute must "(1) define[] the trust res, (2) identif[y] the fiduciary's fund management duties (3) impose[] obligations on the fiduciary prior to the alleged wrongdoing ").

Securities and Exchange Commission (SEC) to prescribe rules and regulations to carry out the administration of the trust. *See* 15 U.S.C. § 78o(c)(3). An express trust (Rule 15c3-3 trust) governed by federal law comes into existence the moment the retail investor funds her Exchange Act Rule 15c3-3 "securities account".[13]

The "purposes for which trusts can be created are as unlimited as the imagination of lawyers." Scott I, Law of Trusts § 1 at 4 (3d. ed. 1977).[14] Most of trust law consists of default rules. *See* Restatement Third § 4 cmt. a(1). The terms of a statute-based express trust are either set forth in the statute, or are supplied by the default rules of general trust law. *See* Restatement (Third) of Trusts § 4 cmt. g. Exchange Act Rule 15c3-3 delineates the terms of a standardized federally mandated revocable, portable, express trust stockbrokers

---

[13] *Begier v. IRS*, 496 U.S. 53, 62 (1990) ("Under common-law principles, a trust is created in property; a trust therefore does not come into existence until the settlor identifies an ascertainable interest in property to be the trust res.").

[14] Bogert, George Gleason. Handbook of the Law of Trusts § 46 (1921) ("But, aside from such restrictions regarding crime and public policy which surround all transactions, the purposes for which trusts of real and personal property may be created in England and the majority of American states are limited only by the imagination of the creators of such trusts.").

must use to hold customer property (funds and securities). The blanks to be filled in for this standardized trust are: 1) the name of the settlor (the retail investor); 2) the name of the trustee (the "carrying" stockbroker); and 3) the name of the beneficiary (the retail investor).

Exchange Act Rule 15c3-3 creates a "securities account" to hold the subject of the trust (the trust *res*),[15] and tailors for the "carrying" stockbroker the administrative responsibilities typically associated with a trustee. To carry out the purpose of the Rule 15c3-3 trust, Rule 15c3-3 requires the "carrying" stockbroker to obtain and maintain possession or control of trust property; segregate trust property; not use the trust property for non-trust purposes; keep records and account for the funds and securities held in the "securities account". *See* 17 C.F.R. § 240.15c3-3(a) *et seq*.

That Congress can create trusts is beyond dispute. Although "[t]he common law of trusts is not binding on Congress," *Begier v. IRS*, 496 U.S. 53, 62 n. 4 (1990), "[a court] should not, [] easily impute to Congress an intention to alter the common law of trusts

---

15 *See* 17 C.F.R. § 240.15c3-3(a)(14) ("The term ***securities account*** shall mean an account that is maintained in accordance with the requirements of section 15(c)(3) of the Act (15 U.S.C. 78o(c)(3)) and § 240.15c3-3." (emphasis in the original).).

when doing so would not materially further the interests of the beneficiary of the statute." *In re Hamilton Taft & Co.*, 53 F. 3d 285, 289-290 (9th Cir. 1995).

Congress did not create for the *cestui que trust* a private right of action to enforce the Rule 15c3-3 trust,[16] but neither did Congress alter the rights and remedies of the *cestui que trust* that exist under federal trust law.[17] In section 28 of the 1934 Exchange Act Congress had already explicitly saved "all other rights and remedies that may exist at law or in equity".[18]

---

16 According to the Second Circuit Court of Appeals in my first SDNY lawsuit "authorities have uniformly held that SEC Rule 15c3-3 . . . does not create a private right of action." [ER-75-76]

17 Restatement (Second) of Trusts § 199 (1959) (a beneficiary of a trust can maintain a suit: (a) to compel the trustee to perform his duties as a trustee; (b) to enjoin the trustee from committing a breach of trust; (c) to compel the trustee to redress a breach of trust; (d)…); *Blair v. Commissioner*, 300 U.S. 5, 13 (1937) ("By virtue of [his equitable interest in the corpus of the trust] he was entitled to enforce the trust, to have a breach of trust enjoined and to obtain redress in case of breach.").

18 Section 28 of the 1934 Exchange Act, states in part: "the rights and remedies provided by [the 1934 Exchange Act] shall be in addition to any and all other rights and remedies that may exist at law or in equity." 15 U.S.C. § 78bb(a).

**d. Statute of Limitations**

The district court in its March 5, 2026 Order applied the wrong cause of action accrual date to my trust claims when it dismissed my lawsuit as untimely. Dkt. No. 35 [ER-8]. There has been no repudiation of any of my Rule 15c3-3 trusts, only a change of trustee.

The subject of my trust claims is securities account No. xxxx-6593, which is my Exchange Act Rule 15c3-3 “securities account” (Rule 15c3-3 trust) TD Ameritrade Clearing Inc. (a Nebraska corporation) established for me in 2004.

At about the same time in 2004, Scottrade Inc. (an Arizona corporation) established four other Exchange Act Rule 15c3-3 “securities accounts” (Rule 15c3-3 trusts) for me. In early 2018 Scottrade Inc., while still an Arizona corporation, resigned the office of trustee for my four “securities accounts”, and although I had a choice of any 1934 Exchange Act registered “carrying” stockbroker to hold the office of trustee for those Scottrade Rule 15c3-3 trusts (“securities accounts”), I chose TD Ameritrade Clearing Inc. because I already had a relationship with TD Ameritrade Clearing Inc. That is how TD Ameritrade Clearing Inc. (a Nebraska corporation) came to be trustee for my five (5) “securities accounts”— it was by mutual

agreement between me and TD Ameritrade; it was not by way of any corporate merger or acquisition.

In March 2023 I received several emails from TD Ameritrade Clearing Inc., (a Nebraska corporation), that it would be resigning the office of trustee for my "securities accounts", and that if I did not choose otherwise my "securities accounts" would be automatically moved to defendant Charles Schwab & Co. (a California corporation). Those March 2023 emails stated:

> You can choose not to move your account to Schwab ("opt out") by either liquidating your account or moving your assets to another broker-dealer.

I wrote letters to Charles Schwab & Co. in March 2023 informing Charles Schwab & Co. that I would allow Charles Schwab & Co. to assume control of my TD Ameritrade securities accounts, but only on the condition that I was not agreeing to arbitrate any matter or any dispute. Copies of my March 2023 letters to defendant notifying defendant of my terms with confirmation my letters were delivered are in the record. Sometime after May 31, 2023, defendant Charles Schwab & Co. voluntarily assumed the office of trustee on my terms — no agreement to arbitrate any dispute. That is how defendant Charles Schwab & Co. came to be the "successor" trustee for my

"securities accounts"— it was by mutual agreement between me and defendant Charles Schwab & Co; it was not by way of any corporate merger or acquisition.

In its March 5, 2026 Order, the district court confused and conflated the trust issues in my current lawsuit with litigation in my previous lawsuits and arbitrations. My current lawsuit seeks the enforcement of my right to a final accounting for securities account no. xxxx-6593, and the enforcement of my right to a final distribution to me of all the assets in securities account no. xxxx-6593.

In contrast, my previous lawsuits and arbitrations dealt with a specific asset (shares of Bancorp International Group Inc.) that was purported to have been purchased for me and held at the Depository Trust Company (DTC). The arbitrator found my claims "inexplicable" under contract law. [ER-48] The two SDNY district courts determined I had to arbitrate the matter even though the FINRA arbitration forum was not available. The Second Circuit Court of Appeals in my <u>second</u> SDNY lawsuit, found my lawsuit untimely under New York and Nebraska tort law. No reference to federal trust law, Nebraska trust law, or Exchange Act Rule 15c3-3 by the district court or appellate court in my <u>second</u> SDNY lawsuit. [ER-66].

In the "Factual Background" section of its March 5, 2026 Order, the court provides an inaccurate factual background. For example, it is a fiction that defendant Charles Schwab & Co. is the surviving entity of a Scottrade Inc. merger with TD Ameritrade Inc. [ER-8].[19] There is no evidence that "In 2005, [I] purchased 2,420,000 shares of stock in Bancorp International Group, Inc. ("Bancorp")" [ER-8]. It was assumed to be true, <u>but not proved to be true</u>, in my two arbitrations [ER-47], and two SDNY lawsuits [ER-63; ER-71], that shares of Bancorp International Group Inc. were purchased for me in 2005. It was assumed to be true, <u>but not proved to be true</u>, that those shares were being held at the Depository Trust Company (DTC).

My two arbitrations, two SDNY lawsuits, and one motion to intervene do not add up to twelve actions. [ER-9]

The district court misrepresents my lawsuit when it states: "Plaintiff contends that Defendant is holding on to 2,420,000 shares of Bancorp, refusing to execute the purchase order, …." [ER-9].

That is not my contention. I allege over and over in my complaint that defendant Charles Schwab & Co. is holding zero (0)

---

19 The district court erred taking judicial notice of Item No. 12.

shares of Bancorp International Group Inc. on my behalf. Complaint Dkt. No 1, [ER-28, 34, 35, 36, 39]. Nor is it my contention that defendant Charles Schwab & Co. is "refusing to execute the purchase order". It is my contention that because of a DTC global lock, my 2005 purchase orders could not be completed, and the credits for 2,420,000 shares of Bancorp International Group Inc. that defendant Charles Schwab & Co. is making to my account statements (digital documents) represent fictitious securities positions. [ER- 28].

In ¶ 38 of my complaint [ER-33], I state:

> 38. On April 16, 2024, Charles Schwab & Co. employee Joe informed me by telephone (nothing in writing) that Charles Schwab & Co. would not be honoring my February 2024 request to register the 2,420,000 shares of Bancorp International Group Inc. in my name because the Depository Trust Company (OTC) had a global lock on the shares.

I further explain in ¶¶ 39-45 of my complaint, [ER-33-34], and ¶¶ 86-90 [ER-38-39] that not one person at Charles Schwab & Co., (not even 'employee Joe') stated by phone or in writing that any shares of Bancorp International Group Inc. are being held for me at the Depository Trust Company (DTC).

In ¶ 46 [ER-34], I state what I was told by the official record keeper, Empire Stock Transfer Inc.:

> 46. On December 4, 2024, I emailed Empire Stock Transfer Inc. to inquire about a obtaining an official list of the registered shareholders of Bancorp International Group. Empire Stock Transfer responded by email that it is not allowed to provide me that list, but stated that Charles Schwab is the registered owner of only 500 shares of Bancorp International Group Inc., and that Cede & Co. (the Depository Trust Company nominee) is the registered owner of zero (0) shares of Bancorp International Group Inc.

Instead of treating my trust claims and § 10(b) claims as distinct claims, the district court accuses me of "attempting to dress [] stale claims as securities violations" [ER-14]. My trust claims are not stale, and neither are my separate and distinct § 10(b) claims.[20]

**1. My Absolute Right To Hold My Property Free Of Trust**.

The U.S. Supreme Court is the ultimate authority on the interpretation of federal law; its interpretation may not be disregarded by lower federal courts. My absolute right to hold my property in securities account no. xxxx-6593 free of trust is found in federal trust law (right of *cestui que trust*), property law (incident of equitable ownership), and the terms of the Rule 15c3-3 trust.

---

[20] Neither the U.S. Supreme Court nor the Ninth Circuit have ruled on whether an account statement (digital document) created by a "carrying" stockbroker for an Exchange Act Rule 15c3-3 "securities account" can (or cannot) be the basis for a standalone § 10(b) fraud claim, or whether each false account statement (digital document) restarts the clock for filing a § 10(b) claim.

Under federal trust law (as interpreted by the U.S. Supreme Court), in actions by *cestui que trust* against an express trustee, the rule is that a statute of limitations has no application on actions to enforce the trust until after the trust terminates.[21]

---

[21] *Prevost v. Gratz*, 19 U.S. 481, 497-98 (1821); *Oliver v. Piatt*, 44 U.S. 333, 411(1845) ("The mere lapse of time constitutes of itself no bar to the enforcement of a subsisting trust; and time begins to run against a trust only from the time when it is openly disavowed by the trustee, who insists upon an adverse right and interest, which is fully and unequivocally made known to the cestui que trust."); *Clarke v. Boorman's Executors*, 85 U.S. 493, 509 (1874) ("It may be conceded that, so long as a trustee continues to exercise his powers as trustee in regard to property, that he can be called to an account in regard to that trust. But when he has parted with all control over the property, and has closed up his relation to the trust, and no longer claims or exercises any authority under the trust, the principles which lie at the foundation of all statutes of limitation assert themselves in his favor, and time begins to cover his past transactions with her mantle of repose."); *Lewis v. Hawkins*, 90 U.S. 119, 126 (1875) ("As between trustee and cestui que trust, in the case of an express trust, the statute of limitation has no application, and no length of time is a bar. Accounts have been decreed against trustees extending over periods of thirty, forty, and even fifty years. The relations and privity between trustee and cestui que trust are such that the possession of one is the possession of the other, and there can be no adverse possession during the continuance of the relation"); *Philippi v. Philippe*, 115 U.S. 151 (1885); *Speidel v. Henrici*, 120 U.S. 377, 386 (1887); *New Orleans v. Warner*, 175 U.S. 120, 130 (1899) ("To set the statute in motion the relation of the parties must be hostile, and so long as their interests are common, or their relations fiduciary, as in the case of landlord and tenant, guardian and ward, vendor and vendee, tenants in common, or trustee and cestuis qui trust, the statute does not begin to run. Zeller's Lessee v. Eckert, 4 How. 289; Seymour v. Freer, 8 Wall. 202; Lewis v. Hawkins, 23 Wall. 119.").

Under federal law, the event that triggers a statute of limitations to run on my trust claims has not occurred. The account statements provided to me by defendant Charles Schwab & Co. are evidence of the existence of securities Account No. xxxx-6593. Under federal law, equity has exclusive jurisdiction over trusts.[22] "Because most trust law is state law, modern federal courts including the Supreme Court routinely resort to the restatements and to the treatises to find applicable principles [of federal trust law]" *Cobell v. Kempthorne*, 569 F. Supp. 2d 223, 248 (D.D.C. 2008).[23]

---

22 *Lessee of Smith v. McCann*, 65 U.S. 398, 407 (1861) (the court of chancery "has the exclusive jurisdiction of trusts and trust estates."); *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256, (1993) ("[A]t common law, the courts of equity had exclusive jurisdiction over virtually all actions by beneficiaries for breach of trust."); *Cigna Corp. v. Amara*, 563 U.S. 421, 439-440 (2011) (A suit by a beneficiary of a trust against the trustee "is the kind of lawsuit that, before the merger of law and equity, respondents could have brought only in a court of equity, not a court of law….. Trusts are, and always have been, the bailiwick of the courts of equity" (quoting 4 A. Scott, W. Fratcher, & M. Ascher, Trusts).

23 *Cigna Corp.*, 563 U.S. 421, 439-442 (referencing Restatement (Second) of Trusts; Restatement (Third) of Trusts; G. Bogert & G. Bogert, Trusts and Trustees; 1 J. Perry, A Treatise on the Law of Trusts and Trustees; Pomeroy's Equity Jurisprudence; 1 J. Story, Commentaries on Equity Jurisprudence; 4 A. Scott, W. Fratcher, & M. Ascher, Trusts); *Barboza*, 799 F. 3d 1257, 1264-65 (referencing Restatement (Third) of Trusts; Scott & Ascher on Trusts; George T. Bogert, Trusts).

> The trustee is under a duty to the beneficiary to give him upon his request at reasonable times complete and accurate information as to the nature and amount of the trust property, and to permit him or a person duly authorized by him to inspect the subject matter of the trust and the accounts and vouchers and other documents relating to the trust.

Restatement (Second) of Trusts § 173 (1959).

> [T]he terms of the trust may regulate the amount of information which the trustee must give and the frequency with which it must be given, the beneficiary is always entitled to such information as is reasonably necessary to enable him to enforce his rights under the trust or to prevent or redress a breach of trust.

Restatement (Second) of Trusts § 173 cmt. c.

> A trustee also ordinarily has a duty promptly to respond to the request of any beneficiary for information concerning the trust and its administration, and to permit beneficiaries on a reasonable basis to inspect trust documents, records, and property holdings.

Restatement (Third) of Trusts § 82(2) (2012)

> A trustee has a duty to maintain clear, complete, and accurate books and records regarding the trust property and the administration of the trust, and, at reasonable intervals on request, to provide beneficiaries with reports or accountings.

Restatement (Third) of Trusts § 83 (2012).

The reason behind those ongoing duties of a trustee is stated in

Bogert: Trusts and Trustees as follows:

> The cestui is the beneficial owner of the trust property, in whole or in part. The trustee is a mere representative, whose function is to attend to the safety of the trust property and procure its avails for the cestui in the manner provided by the trust instrument. That the settlor has created a trust and thus required that the cestui enjoy his property interest indirectly does not imply that the cestui is to be kept in ignorance of the nature of the property and the details of its management. If the cestui is to be able to hold the trustee to proper standards of care and honesty and procure for himself the benefits to which the trust instrument and the doctrines of equity entitle him, he must know of what the trust property consists and how it is being managed.
>
> From these considerations it follows that the cestui is entitled to demand of the trustee all information about the trust and its execution for which he has any reasonable use. If the beneficiary asks for material information about the terms of the trust, its present status, past acts of management, the intent of the trustee as to future operation, or other incidents of the operation of the trust, and these requests are made at a reasonable time and place, and not merely vexatiously, it is the duty of the trustee to give the cestui the facts for which he has asked. Furthermore, the trustee must permit the cestui to examine the account books of the trust, trust documents and papers, and trust property, when a demand is made at a reasonable time and place, and such inspection would be of benefit to the cestui....

Bogert: Trusts and Trustees § 961.

> The trustee also owes his cestui a duty to render at suitable intervals and at the end of the trust a formal and detailed account of his receipts, disbursements, and property on hand, from which the beneficiary can learn whether the trustee has performed his trust and what the present status of the trust property then is. The trustee can be compelled

> by the court of chancery to perform this duty by presenting an account in that court, where it can be subject to the scrutiny of the court and its officers, as well as to criticism by the cestui and other interested parties. It lies within the discretion of the court, if there is no relevant statute, to order an account of the trustee or his successor in interest, at the suit of any interested party, at such a time as seems reasonable to the court in view of the time which has elapsed since the last account and the nature and status of the particular trust.
>
> In order to succeed in such a suit for accounting, it is not necessary that the cestui allege that there is any sum immediately due him under the trust, or that the trustee is in default. The suit is one to obtain information concerning the course of administration, no matter what the present status is.

Bogert: Trusts and Trustees § 963.

> The existence of the trust imposed upon the trustees the duty of an accounting.… The object of this suit is an accounting. A trustee should be not only willing but anxious to account to his beneficiary.

*Ingram v. Lewis*, 37 F. 2d 259, 264 (10th Cir. 1930) (citing to Dillman v. Hastings, 144 U. S. 136 (1892); Irvine v. Dunham, 111 U. S. 327 (1884); 39 Cyc. 464.).

> Appellants' right to an accounting in this case does not rest upon charges of maladministration. Whenever a trust relation between the parties is shown to exist, the right to an accounting at reasonable periods follows as a matter of course. The burden is upon the trustee to show that it has performed its trust and the manner of its performance.

*Garrett v. First Nat. Bank & Trust Co.*, 153 F. 2d 289, 291-92 (5th Cir. 1946) (citing to Dillman v. Hastings, 144 U.S. 136, 12 S.Ct. 662, 36 L.Ed. 378; Restatement of Trusts, Sec. 172; 65 Corpus Juris 878.).

> It is black-letter trust law that an accounting necessarily requires a full disclosure and description of each item of property constituting the corpus of the trust at its inception. Under traditional equitable trust principles, the trustee's report must contain sufficient information for the beneficiary readily to ascertain whether the trust has been faithfully carried out.

*Cobell v. Norton*, 240 F. 3d 1081, 1103 (D.C. Cir. 2001) (quotations and citations omitted).

Under federal law, a statute of limitations does not begin to run in favor of defendant Charles Schwab & Co. until defendant Charles Schwab & Co. discharges its duty to account for all my property in securities account no. xxxx-6593 and distributes to me the entire contents of securities account no. xxxx-6593.

In its March 5, 2026 Order, the district court does not cite to any U.S. Supreme Court decision that overrules settled federal trust law, or cite to where, with respect to Exchange Act Rule 15c3-3 “securities accounts”, Congress altered settled federal trust law.

**2. My Federal Breach Of Fiduciary Duty Claims.**

While both trust law and tort law impose duties of loyalty and care on fiduciaries, trust law imposes on the express trustee ongoing administrative duties for the lifetime of the trust that are unknown to tort or contract law. A violation by the trustee of any duty which as

trustee he owes to the *cestui que trust* is a breach of trust.[24] Many federal courts make the distinction between trust-related breach of fiduciary duty (which trust law governs), and non-trust related breach of fiduciary duty (which tort law governs).[25]

> Tort claims are not categorically disallowed against trustees. Both third parties and beneficiaries can bring a tort claim against a trustee for a tort committed in the course of the administration of the trust, but the trustee's alleged tort must arise from a violation of a duty that is not imposed by trust law. See Restatement (Second) of Trusts § 264 & cmt. a, illus. 1-2 (1959); 4 Scott & Ascher on Trusts § 26.3 (5th ed. 2006).

*Jo Ann Howard And Associates*, 868 F.3d 637, 645 (8th Cir. 2017).

---

24 Restatement (Second) Of Trusts § 201 ("A breach of trust is a violation by the trustee of any duty which as trustee he owes to the beneficiary."): *Boulder Fruit & Heger Farm v. Transp. Fact*., 251 F. 3d 1268, 1271 (9th Cir. 2001) ("The Restatement of Trusts defines a breach of trust as 'a violation by the trustee of any duty which as trustee he owes to the beneficiary.' Restatement (Second) of Trusts § 201 (1959).").

25 *Warmenhoven v. NetApp, Inc*., 13 F. 4th 717, 726 (9th Cir. 2021) ("As a general matter, we have rejected the use of tort law to ground the [ERISA] § 1104(a) fiduciary duty, reasoning that the duty finds its roots in trust law, not tort law."); *He Depu v. Oath Holdings, Inc.*, 531 F. Supp. 3d 219, 243 (D.C. 2021) ("As a general matter, breach of trust claims arise in equity and do not sound in the law of either tort or contract."); *Jo Ann Howard & Assocs., P.C. v. Cassity*, 868 F.3d 637, 645 (8th Cir. 2017) (Trust law, not tort law, imposes a trustee's duties.); *Packard v. Provident Nat. Bank*, 994 F.2d 1039, 1047 (3d Cir. 1993). ("[T]he law of trusts is different from the law of torts.").

It was an error for the district court to dismiss my breach of trust claims against defendant Charles Schwab & Co. as untimely. Defendant Charles Schwab & Co. has held the office of stockbroker trustee for my Exchange Act Rule 15c3-3 "securities accounts" since June 2023 and is withholding from me information I requested on May 8, 2024 about the status of my assets in my Exchange Act Rule 15c3-3 "securities accounts" [ER-53, my letter], and still has not provided me the narrowly tailored interim accounting I sought. *See* Complaint, Docket No. 1 at ¶¶ 30-46 [ER-32-34].

Not even one (1) year passed before I filed my January 2025 complaint to obtain the information and accounting I requested in May 2024 from defendant Charles Schwab & Co.

No prior litigation gave defendant Charles Schwab & Co. a license to withhold from me information or accountings. There is nothing in the 1934 Exchange Act or Exchange Act Rule 15c3-3 that alters the obligation of a trustee under federal trust law to provide the *cestui que trust* information or accountings on demand.

**e. Defendant Is Not A Victim Of Vexatious Litigation**.

Defendant Charles Schwab & Co. made its entrance into this case by accusing me of being a vexatious litigant as defined by

California's vexatious litigant statute. To support its motion to declare me a vexatious litigant, and to support its other motions, defendant requested the district court take judicial notice of twelve (12) items. Dkt. No. 13 [ER-22]. In the March 5, 2026 Order, the district court judicially noticed all twelve (12) items. *See* Dkt. No. 35 [ER-10-13].

I am not objecting to the district court judicially noticing the first eleven (11) items. The first eleven (11) items the district court judicially noticed boil down to two private arbitrations [ER-47], two lawsuits in Second Circuit federal courts [ER-63; ER 71],[26] and one motion to intervene in a separate SDNY case. Five (5) of those first eleven judicially noticed items, Item Nos. 3, 4, 5, 6, & 7 (Exhibits C, D, E, F, & G) are matters in FINRA's arbitration forum. Only two of

---

[26] Judicially noticed items No. 1, 9, & 11 (Exhibits A, I, & K) are all part of my first lawsuit. My first lawsuit started when an attorney (Michael J. Morrison) filed in a Nevada State Court, on my behalf, a lawsuit against the DTC, DTCC, and Cede & Co. (DTC defendants). Mr. Morrison sued the DTC defendants because the arbitrators in my 2011 and 2014 arbitrations denied me the relief of a buy-in because of a "DTC global lock" on shares of Bancorp International Group Inc. The Nevada lawsuit was dismissed because the court lacked personal jurisdiction over the DTC defendants. I appealed, *pro se*, and the appellate court (the Supreme Court of Nevada) affirmed dismissal for lack of personal jurisdiction. Proceeding *pro se*, I restarted my lawsuit against the DTC defendants in New York federal court (SDNY) and added Scottrade Inc. and TD Ameritrade Clearing Inc. as defendants. (Case No.: 1:17-cv-06033-LTS-BCM).

those five are actual decisions by arbitrators, *see* Items 5 & 6 (Exhibits E & F), the other three memorialize administrative decisions by the director of FINRA arbitration; no arbitrator was involved.

Defendant Charles Schwab & Co. was not a party to any of those FINRA arbitrations or FINRA administrative decisions by the director of FINRA arbitration, and the California Supreme court does not consider private arbitrations to burden courts. Nothing that occurred in FINRA's arbitration forum burdened defendant Charles Schwab & Co. or burdened a court.

> As noted above, the primary purposes of collateral estoppel are to 'preserve the integrity of the judicial system, promote judicial economy, and protect litigants from harassment by vexatious litigation.' But because a private arbitrator's award is outside the judicial system, denying the award collateral estoppel effect has no adverse impact on judicial integrity. Moreover, because private arbitration does not involve the use of a judge and a courtroom, later relitigation does not undermine judicial economy by requiring duplication of judicial resources to decide the same issue. Finally, when collateral estoppel is invoked by a nonparty to the private arbitration, the doctrine does not serve the policy against harassment by vexatious litigation. In such cases, the doctrine is asserted not to protect one who has already once prevailed against the same opponent on the same cause of action, but simply to gain vicarious advantage from a litigation victory won by another.

*Vandenberg v. Superior Court*, 21 Cal. 4th 815, 833 (1999).

The remaining air is taken out of defendant's motion to declare me a vexatious litigant by the California legislature and federal trust law.[27] The California legislature and federal trust law grant to the *cestui que trust* a right to petition a court of equity whenever, over the lifetime of the trust, the *cestui que trust* needs the aid of a court to

---

[27] *See* Restatement (Second) Trusts, § 172 (duty to account); Restatement (Second) of Trusts § 173 (duty to inform); Restatement (Third) of Trusts § 83 provides "[a] trustee has a duty to maintain clear, complete, and accurate books and records regarding the trust property and the administration of the trust, and, at reasonable intervals on request, to provide beneficiaries with reports or accountings.". The beneficiary has a corresponding right to demand information and/or an accounting at reasonable intervals and seek the aid of a court to deal with a recalcitrant trustee.

The California legislature codified the trustee's duty to account at the change of trustee, on demand, and when the trust is closed. *See* Cal. Prob. Code § 16062 (duty to account); Cal. Prob. Code § 16460 & § 16461 (interim accountings); Cal. Prob. Code § 16060 & 16061 (duty to inform). The California legislature determined that a "reasonable interval" is six (6) months. *See* Cal. Prob. Code § 17200(7)(B) (a beneficiary/principal may petition a court to require a trustee to "Provide information about the trust under Section 16061 if the trustee has failed to provide the requested information within 60 days after the beneficiary's reasonable written request, and the beneficiary has not received the requested information from the trustee within the six months preceding the request."); Cal. Prob. Code § 17200(7)(C) (a beneficiary of a trust may petition the court to require the trustee "Account to the beneficiary, subject to the provisions of Section 16064, if the trustee has failed to submit a requested account within 60 days after written request of the beneficiary and no account has been made within six months preceding the request.").

enforce the terms of the trust, enforce her right to information and accountings, or to enjoin or obtain redress for breach of the trust. Neither Congress nor the SEC altered the default rules of trust law governing the right of a *cestui que trust* to enforce the trust and enforce her right to information and periodic accountings over the lifetime of the Exchange Act Rule 15c3-3 "securities account".

**f. Claim Preclusion**.

> A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction cannot be disputed in a subsequent suit between the same parties or their privies

*Montana v. United States*, 440 U.S. 147, 153 (1979).

There is no claim preclusion. "Claim preclusion requires (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *Howard v. City of Coos Bay*, 871 F. 3d 1032, 1039 (9th Cir. 2017). Claim preclusion does not apply to claims that accrue after the filing of the operative complaint in the previous suit. *See Media Rights Technologies, Inc. v. Microsoft Corp.*, 922 F. 3d 1014, 1021 (9th Cir. 2019). My complaint alleges trust claims and § 10(b) securities fraud. There has been no previous "judgment on the merits"

of any of my federal trust claims. No federal court sat in equity and adjudicated the merits of my federal trust claims.[28]

**1. The Historical Powers Of Courts of Equity.**

"Notwithstanding the fusion of law and equity by the Rules of Civil Procedure, the substantive principles of Courts of Chancery remain unaffected." *Stainback v. Mo Hock Ke Lok Po*, 336 U.S. 368, 382 n.26 (1949). Supervising the administration and enforcement of trusts are original and inherent powers of courts of equity. "[E]quity has original and complete jurisdiction over trusts and will enforce the rights of a beneficiary because they arise out of a trust." Bogert, The Law of Trusts and Trustees § 870. "Trusts are, and have been since they were first enforced, within the peculiar province of courts of equity." 3 A.W. Scott & W.F. Fratcher, The Law of Trusts § 197 (1988). Like late 18th century English courts of law, "modern courts

---

28 *Guzman v. Polaris Industries, Inc.*, 49 F. 4th 1308, 1314 (9th Cir. 2022) ("Equitable jurisdiction is distinct from subject matter jurisdiction, although both are required for a federal court to hear the merits of an equitable claim. Even when a court has subject matter jurisdiction, there remains the question of equitable jurisdiction before the District Court properly can reach the merits." (quoting Schlesinger v. Councilman, 420 U.S. 738, 754, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975)); *Twist v. Prairie Oil & Gas Co.*, 274 U.S. 684, 691 (1927) ("equity jurisdiction of a federal court goes not to the power of the court as a federal court, but to the merits.").

have not permitted the beneficiary of a trust to maintain an action at law for tort against the trustee for breach of trust." Scott, § 197. "Where the trust estate includes chattels and the trustee deals wrongfully with them, the remedy of the beneficiary is by a suit in equity, and not by an action of trespass, trover, detinue, replevin, or case, or any other action at law." Scott, § 197.

In the days of the divided federal bench, a federal judge knew a *cestui que trust* had no standing in a court of law.[29] A federal judge knew the claims of a *cestui que trust* belonged on the equity side of the bench, and understood that over the lifetime of a trust, a *cestui que trust* might, on multiple occasions, have need to petition a court of equity to enforce the trust, or to enjoin or redress a breach of the trust.

When seen through the eyes of equity, my claims are the anticipated claims of a *cestui que trust*, and I am a diligent and responsible *cestui que trust*.

In the eyes of a court of law, however, it is the opposite. My claims are inexplicable (first arbitration), highly frivolous and I am a

---

[29] *Cigna Corp. v. Amara*, 563 U.S. 421, 439-440 (2011) ("A suit by a beneficiary of a trust against the trustee 'is the kind of lawsuit that, before the merger of law and equity, respondents could have brought only in a court of equity, not a court of law').

serial litigant (second SDNY lawsuit), and here, in this lawsuit, seeking "another bite at the proverbial apple" [ER-13]. The final decision in my first SDNY lawsuit [ER-71], and the final decision in my second SDNY lawsuit [ER-63] leave no doubt they are courts of law viewing legal claims, not courts of equity viewing trust claims.

In its March 5, 2026 Order the district court provides several pages of reasons why my claims are untimely and precluded, but that is through the eyes of a court of law repeating the words of courts of law. [ER-13-15]. The closest the district court came to recognizing me as a *cestui que trust*, and my claims as trust claims, is when the district court states "Plaintiff does not dispute that Defendant is the successor trustee." [ER-13]. But the district court makes no reference to the express trust that defendant Charles Schwab & Co. is the "successor trustee" of, to federal trust law, or to Exchange Act Rule 15c3-3.

My trust claims in this lawsuit are the anticipated claims of a *cestui que trust* over the lifetime of an Exchange Act Rule 15c3-3 "securities account". No previous federal court sat in equity and ordered an accounting for any of my Rule 15c3-3 trusts, or sat in equity to enforce my Rule 15c3-3 trusts. There has been no previous "judgment on the merits" of any of my federal trust claims.

### g. Issue Preclusion

Issue preclusion applies when: (1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits. *Howard*, 871 F. 3d 1032, 1041. "The party asserting preclusion bears the burden of showing with clarity and certainty what was determined by the prior judgment." *Clark*, 966 F. 2d 1318, 1321).

The material issues of law at stake in my current lawsuit that were never actually litigated or decided in any prior proceeding are:

- Whether my Exchange Act Rule 15c3-3 securities account no. xxxx-6593 is (or is not) an express trust.
- Whether a statute of limitation or lapse of time affects my right to enforce my Rule 15c3-3 express trust.
- Whether a statute of limitation, a lapse of time, or previous litigation affects my absolute right to hold my property (funds and securities) in Exchange Act Rule 15c3-3 securities account no. xxxx-6593 free of trust.

The material issue of fact that was never actually litigated or decided in any prior proceeding is:

- What property is in securities account no. xxxx-6593.

**1. A DTC Global Lock.**

The Depository Trust Company (DTC) is a rules based self-regulatory organization (SRO) registered under § 17A of the 1934 Exchange Act as a securities depository. In December 2016 the Securities and Exchange Commission (SEC) approved a DTC rule (now known as DTC Rule 33) governing what is colloquially known as a DTC "global lock".[30] A DTC "global lock" is a service restriction. The text of the SEC approved DTC rule governing "locks and chills" makes clear that the service the DTC is restricting, (i.e. "locking or chilling"), is the service DTC provides to process the settlement of buy and sell transactions.[31]

---

30 *See* Exchange Act Rel. No. 34-79488 (Dec. 6, 2016) (final rule DTC global lock), 81 FR 89533 (Dec.12, 2016).

31 Judge Crotty, the federal judge in the SDNY case I moved to intervene in (judicially noticed Item No. 8, Exhibit H)[ER-12], determined that Mr. Kelley's arbitration award (ordering TD Ameritrade to 'buy-in' the missing shares of Bancorp International Group Inc. TD Ameritrade was crediting to Mr. Kelley's account statements) must be vacated because a DTC global lock restricts settlement of securities transactions. Judge Crotty found that, under the common law of contracts, it was impossible and illegal for TD Ameritrade Clearing Inc. to comply with the arbitration award and purchase any shares of Bancorp International Group Inc. for any customer while a DTC global lock was in effect preventing settlement of purchase transactions for the shares.

What a DTC "global lock" does not do, and legally cannot do, is restrict anyone from removing the securities they own from the custody of the DTC. Under the SEC approved DTC rules, the owner of shares of a security in the custody of the DTC that is subject to a "global lock" can either wait until the DTC removes the "global lock" and then sell her shares, or she can remove her shares from the custody of the DTC and sell her shares at the time of her choosing.

A DTC global lock does not prevent defendant Charles Schwab & Co. from providing me a final accounting for securities account no. xxxx-6593, and it does not bar any court from enforcing my right to hold my property in securities account no. xxxx-6593 free of trust.

**h. My § 1367 Supplemental California Trust Claims**.

In the 1934 Exchange Act, Congress saved "any and all other rights and remedies that may exist at law or in equity." 15 U.S.C. § 78bb(a). If the district court was declining to hear my supplemental California state law claims, then the district court should have dismissed my California state law claims without prejudice.[32]

---

[32] *Guzman v. Polaris Industries, Inc.*, 49 F. 4th 1308, 1314 (9th Cir. 2022) ("the district court should have dismissed Albright's UCL claim without prejudice to refiling the same claim in state court.").

If the district court was exercising its discretion under 28 U.S.C. §1367 to hear my supplement California state law claims, then the district court erred because, like the U.S. Supreme court, the California Supreme court takes the position that while the trust exists, no amount of time bars an action by a *cestui que trust* to enforce the trust.[33] The California Supreme Court also takes the position that "[t]he obligation of such a trustee to account is a continuing duty and the beneficiary's right to demand an accounting runs with that duty and may be asserted so long as that duty remains unperformed; the trustee's mere failure to account, without more, may not be deemed an entire repudiation of the trust so as to start the statute running." *Estate of de Laveaga*, 50 Cal. 2d 480, 487 (1958).

---

[33] *Luco v. De Toro*, 91 Cal. 405, 418 (1891) ("[T]he right to obtain the legal title is but an incident to the estate of the cestui que trust. So long, therefore, as the estate exists, so long will the right to acquire the legal title subsist. It is like the right of a tenant in common to compel partition, and is not a cause of action which accrues in the sense of the statute of limitations, and which may be lost by the lapse of time."); *Love v. Watkins*, 40 Cal. 547, 571 (1871) ("The conveyance from the trustee to the cestui que trust in such cases is but the execution of the trust; the right to obtain the legal title is but an incident to the estate of the cestui que trust. So long, therefore, as the estate exists, so long will the right to acquire the legal title subsist. It is like the right of a tenant in common to compel a partition, and is not a cause of action which accrues in the sense of the Statute of Limitations, and which may be lost by the lapse of time.").

> A trustee must administer a trust according to its instrument and the laws of trusts, see Cal. Prob. Code § 16001, and may only incur appropriate and reasonable costs. See Cal. Prob. Code § 16050. Trustees are under a continuing duty to account for dealings with trust property and to provide those accountings to the beneficiaries on demand. See In re Estate of De Laveaga, 50 Cal.2d 480, 326 P.2d 129, 133 (1958); see also Cal. Prob. Code § 16062. A trustee's violation of its duty is a breach of trust. See Cal. Prob. Code § 16400.

*Banks v. Northern Trust Corp*., 929 F. 3d 1046, 1053 (9th Cir. 2019).

**i. The Court Erred Taking Judicial Notice of Item No. 12**.

The district erred taking judicial notice of Item No. 12. (See Dkt. No. 35 at p. 6) [ER-13]. Judicial notice is a rule of evidence. *See* Fed. R. Evid. 201. "Caution must [] be taken to avoid admitting evidence, through the use of judicial notice, in contravention of the relevancy, foundation, and hearsay rules." *American Prairie Const. Co. v. Hoich*, 560 F. 3d 780, 797 (8th Cir. 2009); *Lee v. City of Los Angeles*, 250 F. 3d 668 (9th Cir. 2001) (Courts may not take judicial notice of hearsay allegations or disputed facts); Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

In order for a fact to be judicially noticed under Rule 201(b), indisputability is a prerequisite. *See* Fed. R. Evid. 201(a) & (b) advisory committee's notes. If a party requests a court take judicial

notice of a fact, and supplies the court with the requisite information, and if the fact is appropriate for judicial notice, then the court must take judicial notice of it. *See* Fed. R. Evid. 201(c)(2).

In Dkt. No. 13, [ER-24] Defendant requested the district court take judicial notice of Item No. 12.

> Defendant also requests that the Court judicially notice the following objective and undisputed fact:
>
> 12. Scottrade, Inc. ("Scottrade") and TD Ameritrade, Inc. ("TDA") merged in 2016. In 2020, TDA was acquired by Defendant, who is the surviving entity.

(Dkt. No. 13 at pp. 3) [ER-24]. Defendant further states on p. 4

> The objective and undisputed facts in Item Number 12 are also noticeable under Rule 201, which allows a court to take notice of adjudicative facts whose accuracy cannot reasonably be questioned. Defendant objectively acquired and absorbed those predecessors, which cannot be reasonably disputed.

(Dkt. No. 13 at pp. 4) [ER-25].

Defendant's attorney, Joel Brodfuehrer provided a declaration stating in ¶ 16:

> 16. Scottrade, Inc. ("Scottrade") and TD Ameritrade, Inc. ("TDA") merged in 2016. In 2020, TDA was acquired by Defendant, who is the surviving entity. These objective facts have been requested for judicial notice in Item Number 12 of the RFJN.

(Dkt. No. 12-1 at pp. 4-5 (June 13, 2025 Declaration of Joel Brodfuehrer) [ER-80-81].

For several reasons, the district abused its discretion taking judicial notice of Item No. 12. First, the district court did not hold defendant to its statutory burden of supplying the court with the necessary information. Fed. R. Evid. 201(c)(2). Joel Brodfuehrer's unsworn say-so in Dkt. No. 13, and sworn say-so in his June 13, 2025 declaration do not satisfy defendant's burden of providing the court with the requisite information under Fed. R. Evid. 201(b) and (c)(2).

Second, indisputability does not mean undisputed. The indisputability requirement of Fed. R. Evid. 201 means the fact is universally true or beyond reasonable doubt. The justification the district court gave for taking judicial notice of Item No. 12, was 1.) because defendant requested it, and 2.) "Plaintiff does not dispute that Defendant is the successor trustee." (See Dkt. No. 35 at p. 6) [ER-13]. The indisputability element does not turn on whether I dispute it. Furthermore, the fact that defendant Charles Schwab & Co. is a successor trustee does not prove that defendant Charles Schwab & Co. is the surviving entity of a corporate event. One does not prove the other, they are distinct inquiries, requiring different proof.

Third, the irrelevance of Item No. 12 to my claims and to defendant's defenses makes it improper for the court to take judicial

notice of Item No. 12. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Unlike defendant's status of successor trustee (which is relevant to my trust claims), whether defendant Charles Schwab & Co. is (or is not) the surviving entity of a corporate event has no relevance to the adjudication or outcome of my trust claims, to my § 10(b) claims, or to defendant's defenses to my claims.

And finally, fictional corporate events are not the proper subject of judicial notice. I searched the Secretary of State websites for Delaware, New York, Nebraska, Arizona, and California, and found no evidence to support Joel Brodfuehrer's say-so that defendant is the surviving entity of the corporate events in Item No. 12. (Dkt. No. 13 [ER-24-25] & Dkt. No. 12-1, ¶ 16 [ER-80-81]). I found no evidence on any Secretary of State website that Defendant Charles Schwab & Co. (a California corporation) is the surviving entity of a 2016 merger between Scottrade Inc. (an Arizona corporation) and TD Ameritrade Inc. (a New York corporation). I found no evidence that TD Ameritrade Inc. (a New York corporation) was acquired by Defendant Charles Schwab & Co. (a California corporation).

## CONCLUSION

I respectfully request the court:

1.) Rule that my Exchange Act Rule 15c3-3 securities account no. xxxx-6593 is an express trust and that my rights to enforce that trust, enjoin a breach of that trust, and obtain redress for a breach of that trust, are not barred by a statute of limitations;

2.) Vacate the district court's March 5, 2026 Order and the March 5, 2026 Judgment, and remand my lawsuit back to the district court for a final accounting and final distribution of the contents of securities account no. xxxx-6593, and any other relief I am entitled as *cestui que trust*; and

3.) Reverse the district court's decision to judicially notice Item No. 12.

Respectfully submitted,

DATED: June 18, 2026

/s/ Jan Harris

Jan Harris,
Pro Se Appellant
101 Aupuni Street, Apt. 420
Hilo, Hawaii 96720
(541) 207-4026
jhk29@hotmail.com

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 26-3263

I am the attorney or self-represented party.

**This brief contains** 11,772 **words,** including ____ words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

- (●) complies with the word limit of Cir. R. 32-1.
- ( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.
- ( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).
- ( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.
- ( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  - [ ] it is a joint brief submitted by separately represented parties.
  - [ ] a party or parties are filing a single brief in response to multiple briefs.
  - [ ] a party or parties are filing a single brief in response to a longer joint brief.
- ( ) complies with the length limit designated by court order dated ____.
- ( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/Jan Harris **Date** 6/18/2026

*(use "s/[typed name]" to sign electronically-filed documents)*