**No. 26-3263**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

JAN HARRIS,

*Plaintiff-Appellant*,

v.

CHARLES SCHWAB & CO, INC.,

*Defendant-Appellee*.

On Appeal from the United States District Court
for The Northern District Of California
No. 4:25-cv-00807-KAW
Hon. Kandis A. Westmore, Presiding

---

# APPELLANT REPLY BRIEF

---

Jan Harris
*Pro Se Appellant*
101 Aupuni Street, Apt. 420
Hilo, Hawaii 96720
(541) 207-4026

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii
PRELIMINARY MATTER ........ 1
INTRODUCTION ........ 2
ARGUMENT ........ 5
a. Reversable Error No. 1 ........ 12
1. Affirmative Defenses At The Motion To Dismiss Stage ........ 15
b. Reversable Error No. 2 ........ 22
c. Reversable Error No. 3 ........ 24
d. Item No.12. ........ 28
1. Not A Fact Generally Known ........ 29
2. Did Not Supply The Court Necessary Information. ........ 29
3. Not A Relevant Fact. ........ 30
4. Not The Proper Subject For Judicial Notice. ........ 30
CONCLUSION ........ 31
CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Federal Cases**

*AT&T Technologies, Inc. v. Communications Workers*,
475 U.S. 643 (1986). .......................................................................20

*Berk v. Choy*,
607 U.S. 187 (2026). ...............................................................5, 12, 19

*Bonilla v. Oakland Scavenger Co.*,
697 F. 2d 1297 (9th Cir. 1982) ..........................................................12

*Central States Pension Fund v. Central Transport, Inc.*,
472 U.S. 559 (1985).. ......................................................................25

*Colorado River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976) .........................................................................25

*Firestone Tire & Rubber Co. v. Bruch*,
489 U.S. 101 (1989) ........................................................................18

*Godecke v. Kinetic Concepts, Inc.*,
937 F.3d 1201 (9th Cir. 2019) .............................................................5

*Hart v. Massanari*,
266 F.3d 1155 (9th Cir. 2001) .............................................................3

*Henry Schein v. Archer and White Sales*,
586 U.S. 63 (2019). ..........................................................................20

*Howlett v. Rose*,
496 U.S. 356 (1990) .........................................................................16

*Hunter v. United States*,
30 U.S. 173 (1831) ...........................................................................24

*Huynh v. Chase Manhattan Bank*,
465 F. 3d 992 (9th Cir. 2006) ............................................................11

**Federal Cases cont.**

*In re Honkanen*,
446 B.R. 373 (9th Cir. BAP 2011) ........................................................22
*In re Korean Air Lines*,
829 F.2d 1171 (D.C. Cir. 1987)...............................................................3
*Jensen v. Brown*,
131 F. 4th 677 (9th Cir. 2025) ..........................................................15, 16
*Khoja v. Orexigen Therapeutics, Inc.*,
899 F. 3d 988 (9th Cir. 2018). ...................................................12, 13, 15
*Lee v. City of Los Angeles*,
250 F. 3d 668 (9th Cir. 2001) ....................................................5, 12, 13
*Media Rights Technologies, Inc. v. Microsoft Corp.*,
922 F. 3d 1014 (9th Cir. 2019) .......................................................20, 21
*Mertens v. Hewitt Associates*,
508 U.S. 248 (1993) ..............................................................................24
*Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*,
692 F.3d 983 (9th Cir. 2012) ..................................................................30
*Mosser v. Darrow*,
341 U.S. 267 (1951) ..............................................................................18
*Murphy v. American General Life Ins. Co.*,
74 F.Supp.3d 1267 (C.D. Cal. 2015) ..............................................16, 17
*Payne v. Hook*,
74 U.S. 425 (1869). ................................................................................24
*SEC v. Capital Consultants, LLC*,
397 F. 3d 733 (9th Cir. 2005) ..................................................................7
*SEC v. Jarkesy*,
603 U.S. 109 (2024) ................................................................................6

**Federal Cases cont.**


*Silber v. Mabon*,
957 F.2d 697 (9th Cir.1992) .......... 7, 10

*Silk v. Bond*,
65 F. 4th 445 (9th Cir. 2023) .......... 25

*Smith v. Clark Cnty. Sch. Dist.*,
727 F.3d 950 (9th Cir. 2013) .......... 23

*Stewart v. U.S. Bancorp*,
297 F.3d 953 (9th Cir. 2002) .......... 18, 19

*Univ. of Texas v. Camenisch*,
451 U.S. 390 (1981). .......... 20

*United States v. Page*,
106 F. 4th 834 (9th Cir. 2024) .......... 16


**State Cases**


*Smith v. Kisorin USA, Inc.*,
254 P.3d 636, 127 Nev. 444 (2011) .......... 10


**U.S. Statutes**


11 U.S.C. § 523(a)(4) [Bankruptcy Code] .......... 22

15 U.S.C. § 78a et seq. [1934 Exchange Act] .......... *passim*

15 U.S.C. § 78o(c)(3) (Section 15c3) .......... 2, 8, 11

15 U.S.C. § 78aa (Section 27) .......... 6, 11, 24

28 U.S.C. § 1331 .......... 24


**California Statutes**


Cal. Prob. Code § 16062 .......... 17

Cal. Prob. Code § 16460 .......... 17

**Rules and Regulations**

17 C.F.R. § 240.15c3-3, SEC Rule 15c3-3 .......................................... *passim*

**SEC Administrative**

Exchange Act Rel. No. 34-9856 (Nov. 10, 1972) (Rule 15c3-3),
37 FR 25224 (Nov. 29, 1972) ................................................................ 8

Exchange Act Rel. No. 34-46473 (Sept. 9, 2002),
67 FR 58284 (Sept. 13, 2002). ............................................................... 2

**Treatise And Restatements**

Restatement (Second) of Trusts (1957, 1959) ................................ 18, 21, 25

Restatement (Third) of Trusts (2007, 2012) ........................................ 10, 21

Restatement (Second) of Conflict of Laws ............................................... 11

**Other**

Securities Investor Protection Act of 1970 (1970 SIPA Act),
Pub. L. No. 91-598, 84 Stat. 1636 (1970) ........................................ 6, 8, 9

## PRELIMINARY MATTER

The Appellee is Charles Schwab & Co. a California corporation registered under the 1934 Exchange Act as the "carrying" stockbroker currently responsible for the administration of several of my Exchange Act Rule 15c3-3 "securities accounts". Appellee Charles Schwab & Co. is the only defendant in my lawsuit below.

The Appellee is not The Charles Schwab Corporation, a Delaware corporation trading on the New York Stock Exchange under the ticker symbol SCHW. *See* Dkt. No. 8-1 at ECF p. 2 (Appellee Disclosure Statement).[1]

Defendant's Answering Brief characterizes the filing of my Complaint in California as forum shopping. (Dkt. No. 8-1 at ECF pp. 9, 12). It is not. I had to file my Complaint in California to obtain personal jurisdiction over defendant Charles Schwab & Co. a California corporation.

---

[1] In addition to confusing itself with its parent corporation in the Disclosure Statement, defendant's identity confusion is found in its Answering Brief. Multiple times defendant states and infers, as if fact, defendant's (fictional) status as the surviving entity of the corporate events in Item No. 12. (Appellee Answering Brief, Dkt. No.8.1 at ECF p. 2 (Disclosure Statement); ECF pp. 15, 16, 19, 20-21).

## INTRODUCTION

Sometime after May 31, 2023, defendant Charles Schwab & Co. (a California corporation) voluntarily assumed the office of trustee (carrying stockbroker) for four of my Exchange Act Rule 15c3-3 "securities accounts".

> The term ***securities account*** shall mean an account that is maintained in accordance with the requirements of section 15(c)(3) of the Act (15 U.S.C. 78o(c)(3)) and § 240.15c3-3."

17 C.F.R. § 240.15c3-3(a)(14) (emphasis in the original) [ER-29 at ¶ 14; ER-31 at ¶ 26 (Complaint, Dkt. No. 1)].[2]

In January 2025 I filed a Complaint in the Northern District of California pleading two distinct types of claims: section 10(b) securities fraud claims and common law trust claims. My January 2025 Complaint covers only the time period between June 2023 and January 2025. [ER-27-46 (Complaint, Dkt. No. 1)].

---

[2] Exchange Act Rule 15c3-3 was adopted in 1972. [ADD 25-31]. In 2002, the term "securities account" was added to Exchange Act Rule 15c3-3 to distinguish an 'account' governed by the 1934 Exchange Act from an 'account' governed by the Commodity Exchange Act. *See* Exchange Act Rel. No. 34-46473 (Sept. 9, 2002) 67 FR 58284, 58290, 58299 (Sept. 13, 2002). Compare [ADD-28, 17 CFR 240.15c3-3(a) Definitions. "for the account of"] with [ADD-43, 17 CFR 240.15c3-3(a) Definitions (a)(14) "securities account" & (a)(15) "futures account"].

On March 5, 2026, without distinguishing my § 10(b) claims from my trust claims, and without discussing whether any of my claims were adequately plead, the district court in a cursory manner dismissed my whole lawsuit as untimely accusing me of dressing up previously litigated claims as securities violations. Among other things, the district judge relied on an out of circuit decision that applied New York and Nebraska tort law not federal trust law. [ER-8-15 (March 5, 2026 Order); ER-7 (March 5, 2026 Judgment)].

> The federal courts have not only the power but the duty to decide issues of federal law correctly. There is no room in the federal system of review for rote acceptance of the decision of a court outside the chain of direct review. If a federal court simply accepts the interpretation of another circuit without independently addressing the merits, it is not doing its job.
>
> * * *
>
> The federal courts spread across the country owe respect to each other's efforts and should strive to avoid conflicts, but each has an obligation to engage independently in reasoned analysis. Binding precedent for all is set only by the Supreme Court, and for the district courts within a circuit, only by the court of appeals for that circuit.

*In re Korean Air Lines*, 829 F.2d 1171, 1175-76 (D.C. Cir. 1987); *Hart v. Massanari*, 266 F.3d 1155, 1171-73 (9th Cir. 2001).

On June 18, 2026, I filed my Opening Brief to appeal the district court's March 5, 2026 Order and Judgment dismissing my trust claims at the motion to dismiss stage. In my Opening Brief I

requested the Ninth Circuit determine whether a funded Exchange Act Rule 15c3-3 "securities account" is (or is not) an express trust; I requested the court review the correctness of the district court's March 5, 2026 decision to dismiss my trust claims with prejudice at the motion to dismiss stage; and I requested the court determine whether the district court abused its discretion taking judicial notice of Item No. 12. (Appellant Opening Brief, Dkt. No. 3.1)

The Duck Test holds that if it walks like a duck, swims like a duck, and quacks like a duck, it probably is a duck. In my Opening brief I argue that a funded Exchange Act Rule 15c3-3 "securities account" passes the duck test for a common law express trust. (Appellant Opening Brief, Dkt. No. 3.1 at ECF pp. 9, 14, 16-26).

With respect to the correctness of the district court's decision, I argue in my Opening Brief that the district court committed three reversable errors with respect to my trust claims. (Appellant Opening Brief, Dkt. No. 3.1 at ECF pp. 27-52). Defendant Charles Schwab & Co. filed its Answering Brief on August 28, 2026 and argues the district court correctly dismissed my whole lawsuit and that the district court properly took judicial notice of Item No. 12. (Appellee Answering Brief, Dkt. No.8.1).

**ARGUMENT**

A Rule 12(b)(6) motion to dismiss is a procedural mechanism created to test the legal sufficiency of the plaintiff's complaint. Review is limited to the complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). A complaint may be dismissed as a matter of law for one of two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim. *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019). “The court asks only whether the complaint's factual allegations, if taken as true, state a claim that is plausible on its face.” *Berk v. Choy*, 607 U.S. 187, 193 (2026). “A complaint that satisfies this standard is well-pleaded and may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable.” *Berk*, 607 U.S. 187, 193. “By design, this system of pleading makes it relatively easy for plaintiffs to subject defendants to discovery—even for claims that are likely to fail.” *Berk*, 607 U.S. 187, 194.

My Exchange Act Rule 15c3-3 federal trust claims, my § 10(b) securities fraud claims, and my § 1367 supplemental California trust claims are distinct causes of action. (Appellant Opening Brief, Dkt. No. 3.1 at ECF p. 32). My § 10(b) securities fraud claims are federal

statutory tort (legal) causes of action. *See SEC v. Jarkes*y, 603 U.S. 109, 125 (2024). The subject of my § 10 (b) claims is the fifty-seven (57) account statements (digital documents) defendant Charles Schwab & Co. has created and furnished to me since June 2023 that I allege contain fictitious securities positions for shares of Bancorp International Group Inc. [ER-27-28; 36 at ¶¶ 65-67; 41 at ¶ 100; 43 at ¶116 (Complaint)]. Congress gave federal district courts original and exclusive jurisdiction to hear my federal § 10(b) claims, 15 U.S.C. 78aa. To simplify my appeal, I chose not to appeal the district court's dismissal of my § 10(b) claims. (Appellant Opening Brief, Dkt. No. 3.1 at ECF p. 32 n. 20)

My federal trust claims are equitable causes of actions premised on my Exchange Act Rule 15c3-3 securities account no. xxxx-6593 being a common law express trust that Congress gave federal protection to in the 1970 SIPA Act amendments to the 1934 Exchange Act. Federal law determines the timeliness of my federal trust claims. Federal district courts have original and exclusive jurisdiction to hear my federal trust claims, 15 U.S.C. 78aa. (Appellant Opening Brief, Dkt. No. 3.1 at ECF pp. 16-26).

My § 1367 supplemental California trust claims are state law claims premised on defendant Charles Schwab & Co. (a California corporation) being the current trustee of the express trusts my federal trust claims are premised on. California determines the timeliness of my California rights and remedies against a California corporation acting as trustee for my express trusts. (Appellant Opening Brief, Dkt. No. 3.1 at ECF pp. 50-52).

With respect to the plausibility of my trust legal theory, the Ninth Circuit has stated that:

> All garden-variety stock brokerage firms, for example, hold equities in trust for their clients, and holding the stock in street name is little more than an administrative convenience that does not deprive the clients of equitable and legal rights in the securities.

*SEC v. Capital Consultants, LLC*, 397 F. 3d 733, 747 & n.12 (9th Cir. 2005) (citing to *Silber v. Mabon*, 957 F.2d 697, 699 (9th Cir.1992)).

My Complaint states sufficient facts to support a trust theory, my Complaint alleges a trust res (Exchange Act Rule 15c3-3 "securities account"), a trustee (defendant Charles Schwab & Co.), a trust beneficiary (me) and a 'reason why' a federal court of equity should intervene. Any matter pertaining to the administration or enforcement of an express trust satisfies the 'reason why' a court of

equity should intervene. (Appellant Opening Brief, Dkt. No. 3.1 at ECF pp. 27-29).

In 1970 Congress determined a common law express trust was the legal vehicle that would best protect customer property (funds and securities) against stockbroker misuse or insolvency. In section 7(d) of the 1970 SIPA Act Congress amended section 15(c)(3) of the 1934 Exchange Act and defined the subject of a trust, (i.e. the trust res) and directed the Securities and Exchange Commission (SEC) to prescribe rules and regulations governing a stockbroker's administration of the trust. [ADD-20 (§ 7(d) of the 1970 SIPA Act)]; 15 U.S.C. § 78o(c)(3).

In November 1972, the SEC adopted Exchange Act Rule 15c3-3, 17 C.F.R. § 240.15c3-3 [ADD-25-31]. The preamble states:

> Rule15c3-3 as adopted herein is well fashioned to furnish the protection for the integrity of customer funds and securities as envisioned by Congress when it amended section 15(c) (3) of the Act by adopting section 7(d) of the Securities Investor Protection Act of 1970 (the "SIPC Act").

Exchange Act Rel. No. 34-9856 (Nov. 10, 1972) (Rule 15c3-3), 37 FR 25224 (Nov. 29, 1972) codified as 17 C.F.R. § 240.15c3-3.

For over half a century, the way a retail investor obtains access to the federally regulated securities market is by establishing an Exchange Act Rule 15c3-3 "securities account" (Rule 15c3-3 trust).

The intention of a retail investor to establish the Section 15c3 express trust envisioned by Congress in the 1970 SIPA Act is evident by the manner in which an Exchange Act Rule 15c3-3 "securities account" is established. It goes like this: Step one, a retail investor (settlor) contacts an Exchange Act registered stockbroker because she wants to open a securities account to buy and sell securities. Step 2, the stockbroker agrees to open a securities account for the retail investor. Step 3, the retail investor (settlor) transfers to the stockbroker cash and/or securities to deposit into her securities account. The moment the stockbroker deposits one penny or one share of stock into the retail investor's securities account, a Rule 15c3-3 express trust comes into existence with all the bells and whistles of a common law express trust. (Appellant Opening Brief, Dkt. No. 3.1 at ECF pp. 20-26).

One of the hallmarks of an express trust is divided title. The rule of property that allows legal title and equitable title to be vested in different persons at the same time, is reflected in the century old stockbroker practice of holding customers securities in "street name". With the adoption of Exchange Act Rule 15c3-3, both the customer securities and the customer cash are held in "street name", whereas before the adoption of Exchange Act Rule 15c3-3 customer cash in

the hands of a stockbroker was sometimes deemed to give rise to a debtor-creditor relationship rather than a trust relationship. Trust law governs an Exchange Act Rule 15c3-3 “securities account”. The “carrying” stockbroker holds legal title to the cash and the securities in the account, while the retail investor holds equitable title to every penny and every share of stock in the Rule 15c3-3 “securities account”. In the eyes of equity, the retail investor is the true owner of the cash and securities in the securities account.[3]

---

[3] Holding title is not the same as ownership because ‘ownership’ indicates that one holds an interest for one's own benefit while ‘title’ does not distinguish between holding an interest for oneself or for another. Restatement (Third) of Trusts § 2, Comment d; *Silber v. Mabon*, 957 F.2d 697, 699 (9th Cir.1992) (“Under common industry practice, most publicly traded stock is held in the ‘street name’ of brokerage houses for the benefit of their customers. Only brokerage houses or other ‘record owners’ appear on official corporate transfer records. The actual interest in the stock (and consequently, the interest in any lawsuit relating to the stock) is that of the beneficial owner.”); *Smith v. Kisorin USA, Inc*., 254 P.3d 636, 638, 127 Nev. 444 (2011) (“The Smiths' shares were held in street name by Cede & Co., the nominee for the Depository Trust Company. Thus, Cede & Co. was the stockholder of record, while the Smiths were the beneficial owners of the shares.”); *Smith*, 254 P.3d 636, 638 n.1 (“The term ‘street name’ refers to a ‘brokerage firm's name in which securities owned by another are registered.’ Black's Law Dictionary 1557 (9th ed. 2009). A beneficial holder of stock holds equitable title to corporate stock; however, the stock is not registered under the holder's name in the corporation's records. Thus, in practice, the beneficial holder of stock holds equitable title to the stock that is registered under the holder in street name.” (internal citation omitted)).

Section 272 of the Restatement (Second) of Conflict of Laws states that the trust instrument may designate the law governing the administration of the trust. *See* Restatement (Second) of Conflict of Laws § 272 (inter vivos trusts).[4] The terms of the Rule 15c3-3 trust expressly designate federal law as governing the administration of a Rule 15c3-3 "securities account" (Rule 15c3-3 trust).

> The term ***securities account*** shall mean an account that is maintained in accordance with the requirements of section 15(c)(3) of the Act (15 U.S.C. 78o(c)(3)) and § 240.15c3-3."

17 C.F.R. § 240.15c3-3(a)(14) (emphasis in the original).

As Congress intended, by bringing a common law express trust under the protection of the 1934 Exchange Act, and then authorizing the SEC to step in the shoes of the settlor and draft the non-waivable terms of the common law trust, federal district courts have original and exclusive jurisdiction to supervise the administration and enforcement of the Rule 15c3-3 trust. 15 U.S.C. 78aa. (Appellant Opening Brief, Dkt. No. 3.1 at ECF p. 20-22).

---

[4] Where a complaint is based on federal question jurisdiction, federal common law choice-of-law rules apply, and federal common law follows the approach outlined in the Restatement (Second) of Conflict of Laws. *Huynh v. Chase Manhattan Bank*, 465 F. 3d 992, 997 (9th Cir. 2006).

**a. Reversable Error No. 1.**

"[A] district court commits reversible error when it considers matters extraneous to the pleadings while treating the motion as one to dismiss, rather than as one for summary judgment." *Bonilla v. Oakland Scavenger Co.*, 697 F. 2d 1297, 1301 (9th Cir. 1982). "When evaluating whether a plaintiff has stated a claim, the court cannot consider matters outside the pleadings." *Berk*, 607 U.S. 187, 193; Fed. R. Civ. P. 12(d). "[F]actual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)." *Lee*, 250 F. 3d 668, 688. Defendant's version of the facts is irrelevant at the motion to dismiss stage. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F. 3d 988, 999 (9th Cir. 2018). There are two exceptions to the Rule 12(d) conversion requirement: the incorporation-by-reference doctrine and judicial notice under Federal Rule of Evidence 201. Neither exception allows a district court to resolve factual disputes at the pleading stage. *Khoja*, 899 F. 3d 988, 998-999. "A court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment." *Lee*, 250 F.3d 668, 689. But judicial notice is limited to the existence of public records, not the truth of the matters

contained within them. "[W]hen a court takes judicial notice of another court's opinion, it may do so not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Lee*, 250 F.3d 668, 690. "[A] court cannot take judicial notice of disputed facts contained in such public records." *Khoja*, 899 F. 3d 988, 999.

The district court judicially noticed twelve (12) items. The first eleven (11) items are matters of public record. (Appellant Opening Brief, Dkt. No. 3.1 at ECF pp. 41-42). But the district court did more than take judicial notice of the existence of the public records; the district court relied on those records, and defendant's lawyers' summary of those records,[5] to resolve disputed material factual matters. The district court relied on out of circuit court narratives that were based on stockbroker attorney say-so, while ignoring the facts as they were on the ground when I filed my Complaint in January 2025. For example, I alleged in my Complaint, based on credible evidence,

---

[5] Compare the March 5, 2025 Order [ER-11-12 (Dkt. No. 35)] with Defendant's Request to Take Judicial Notice [ER-23-24 (Dkt. No. 13]. In Dkt. No. 35, the district cut and pasted, word for word, defendant's lawyers' summary (hearsay) of each judicially noticed proceeding.

that there are no shares of Bancorp International Group Inc. are on deposit at the DTC. [ER-34 at ¶ 46]. If that is true, then the DTC is no longer interfering with any stockbroker complying with my request to register the shares in my name, making it irrelevant that ten years ago I was told by an arbitrator that the DTC was interfering.[6]

Defendant's arguments support a finding that the district court prematurely dismissed my trust claims. Defendant's arguments lay bare how many disputed factual matters the district court had to resolve in defendants favor to justify dismissing my Complaint, and how far outside my Complaint the district court had to reach, and assumptions it had to make, in order to dismiss my lawsuit at the motion to dismiss stage. (*See* Appellee Answering Brief, Dkt. No.8.1).

---

[6] In my 2011 arbitration, the arbitrator did not require proof that the DTC was interfering, instead she built her narrative regarding the DTC global lock on the stockbrokers' lawyers' say-so (hearsay). The district judge in my first SDNY lawsuit built her narrative on the lawyers' say-so (hearsay). The Second Circuit Court of Appeals in my first SDNY lawsuit built its narrative on the district judge narrative (hearsay) the 2011 arbitrator narrative (hearsay) and the stockbrokers' lawyers' say-so (hearsay). In my second SDNY lawsuit, the district judge built her narrative on the 2011 arbitrators' narrative (hearsay), the first district court and appellate courts narratives (hearsay), and the stockbroker's lawyers' say-so (hearsay). The Second Circuit Court of Appeals in my second SDNY lawsuit built its hearsay narrative on the district court's narrative (hearsay).

In sum, the district court did more than take judicial notice of undisputed matters of public record. The district court assumed the existence of facts that favor defendant, resolved disputed factual matters by speculation and conjecture from evidence outside my Complaint, and did not construe anything in the light most favorable to me. (Appellant Opening Brief, Dkt. No. 3.1 at ECF pp. 27-32).

> [J]udicial notice and incorporation-by-reference do have roles to play at the pleading stage. The overuse and improper application of judicial notice and the incorporation-by-reference doctrine, however, can lead to unintended and harmful results. Defendants face an alluring temptation to pile on numerous documents to their motions to dismiss to undermine the complaint, and hopefully dismiss the case at an early stage. Yet the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery. This risk is especially significant in SEC fraud matters, where there is already a heightened pleading standard, and the defendants possess materials to which the plaintiffs do not yet have access.
>
> * * *
>
> If defendants are permitted to present their own version of the facts at the pleading stage—and district courts accept those facts as uncontroverted and true—it becomes near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently "plausible" claim for relief.

*Khoja*, 899 F. 3d 988, 998-99.

**1. Affirmative Defenses At The Motion To Dismiss Stage.**

A complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense appears on its face. *See Jensen v. Brown*,

131 F. 4th 677, 691 (9th Cir. 2025). At the motion to dismiss stage, a complaint may be dismissed "on statute of limitations grounds only if, accepting all well-pled facts in the complaint as true, it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *United States v. Page*, 106 F. 4th 834, 838 (9th Cir. 2024). "The elements of, and the defenses to, a federal cause of action are defined by federal law." *Howlett v. Rose*, 496 U.S. 356, 375 (1990).

I filed my Complaint on January 23, 2025. I alleged my Exchange Act Rule 15c3-3 securities accounts (which are the subject of my Complaint) were established in 2004. I alleged that at the time I filed my Complaint, those "securities accounts" were open and contained funds and/or securities that I am the owner of. When viewed through the lens of federal trust law, my federal trust claims in my Complaint are timely filed. (Appellant Opening Brief, Dkt. No. 3.1 at ECF pp. 33-40).

Defendant cites to *Murphy v. American General Life Ins. Co.*, 74 F.Supp.3d 1267, 1281 (C.D. Cal. 2015) for the date when the statute of limitations begins to run (the accrual date) on my § 1367 supplemental California trust claims. *Murphy* is inapposite. *Murphy*,

is a case that is dealing with constructive trusts and resulting trusts, *Murphy* is not analyzing an express trust.

Defendant also cites to Cal. Prob. Code § 16460(a)(2) which does apply to express trusts, but defendant has misinterpreted the California Probate Code. (Appellee Answering Brief, Dkt. No.8.1 at ECF p. 17). Under California trust law (and federal trust law) as long as my securities accounts are open, defendant Charles Schwab & Co., has a continuing obligation to respond to my requests for accountings and information. Cal. Prob. Code § 16062(a) provides the trustee shall account upon a change of trustee.

My effort to obtain an interim accounting at the change of trustee and obtain information from defendant is detailed in my Complaint. [ER-32-34 (¶¶ 30-46)]. Under Cal. Prob. Code § 16460(a)(2), a statute of limitations would begin to run on the date Charles Schwab & Co. delivers the accounting to me. My Complaint was filed within two (2) years of defendant Charles Schwab & Co. assuming the office of trustee for my Rule 15c3-3 securities accounts; and within one (1) year of my May 2024 request for information and an interim accounting (which I never received).

> [A] trusteeship is serious business and is not to be undertaken lightly or so discharged. The most effective sanction for good administration is personal liability for the consequences of forbidden acts, and there are ways by which a trustee may effectively protect himself against personal liability. The practice is well established by which trustees seek instructions from the court, given upon notice to creditors and interested parties, as to matters which involve difficult questions of judgment.
>
> * * *
>
> A further remedy of a trustee for limiting, if not avoiding, personal liability is to account at prompt intervals, which puts upon objectors the burden of raising their objections. And had the trustee accounted, as good practice would have required, he undoubtedly would have discovered long ago that this arrangement was objectionable. It hardly lies in the mouth of a trustee to allow his liabilities to accumulate over such a period of time and then ask the court to relieve him of them because they have become too burdensome.

*Mosser v. Darrow*, 341 U.S. 267, 274-75 (1951); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 112 (1989) (instructions); Restatement (Second) of Trusts § 201, cmt b (instructions); Appellant Opening Brief, Dkt. No. 3.1 at ECF pp. 35-40 (accounting).

Defendant also argues “this could not be a clearer case where the doctrine of *re judicata* plainly applies.” (Appellee Answering Brief, Dkt. No.8.1 at ECF pp. 19). I disagree.

Every judicial ruling is determinative of something. “Supreme Court precedent confirms that a dismissal for failure to state a claim under Rule 12(b)(6) is a judgment on the merits' to which res judicata applies.” *Stewart v. U.S. Bancorp*, 297 F.3d 953, 957 (9th Cir. 2002). The preclusive effect of a judgment dismissing a claim pursuant to

Rule 12(b)(6) does not extend beyond what the rendering federal court had the power to do under Rule 12(b)(6). The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the underlying alleged trust, contract, or tort claims. *See Berk*, 607 U.S. 187, 193-94. Under Rule 12(b)(6) the judge does not resolve disputed facts, the plaintiff's claims and defendant's defenses are not tested as they would be at summary judgment or a trial. Dismissal pursuant to Rule 12(b)(6) means the rendering court did not find the complaint plead a cognizable claim. *Stewart*, 297 F.3d 953, 957.

Defendant argues in its Answering Brief that my claims are precluded and untimely because in my second SDNY lawsuit, the district judge said so. But defendant has taken Judge Vyskocil's statements out of context. Judge Vyskocil was ruling on my motion for a preliminary injunction when she stated the following:

> While Plaintiff's cause of action in the arbitrations (breach of contract) differs from the theories she now asserts (common law breach of fiduciary duty and trust), the distinction is not dispositive because her claims arise from a common nucleus of operative facts. . . It is of no moment that Plaintiff carefully frames the relief she now seeks to be just-so-slightly different than what she sought in the past.

(Appellee Answering Brief, Dkt. No.8.1 at ECF p. 20).

A ruling on a preliminary injunction is not a ruling on the merits. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 394-95 (1981). Judge Vyskocil denied my motion for a preliminary injunction and granted TD Ameritrade's motion to compel arbitration. Judge Vyskocil did not make a binding res judicata or timeliness determination nor did she rule on the merits of any of my claims.[7]

None of those judicially noticed New York federal court rulings moved past a motion to dismiss or a motion to compel arbitration. There was no discovery, no ruling on the merits of any of my trust claims, and no ruling on whether a funded Exchange Act Rule 15c3-3 "securities account" is (or is not) a common law express trust governed by federal law.

Furthermore, "claim preclusion does not apply to claims that accrue after the filing of the operative complaint in the previous suit."

---

[7] *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649-650 (1986) ("[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims. . . Whether arguable or not, indeed even if it appears to the court to be frivolous. . . [t]he courts, [] have no business weighing the merits of the grievance"); *Henry Schein v. Archer and White Sales*, 586 U.S. 63 (2019) ("When the parties' contract assigns a matter to arbitration, a court may not resolve the merits of the dispute even if the court thinks that a party's claim on the merits is frivolous.").

*Media Rights Technologies, Inc. v. Microsoft Corp.*, 922 F. 3d 1014, 1021 (9th Cir. 2019). Contract, tort, and trust claims are distinct causes of action governed by separate bodies of law. In many situations parties have more than one legal relationship between them, and some relationships have ongoing and recurring obligations. My Exchange Act Rule 15c3-3 "securities accounts" are the basis for my trust relationships with Appellee Charles Schwab & Co.[8] The Client Agreement is the basis for a contractual relationship.

My complaint alleges no contract claims. My complaint alleges common law trust claims and separate and distinct § 10(b) tort claims. I have never before alleged § 10(b) securities fraud (tort) claims, or any fraud claims, against any stockbroker or anyone else.

Both my arbitrations proceeded under FINRA's simplified rules for small claims. Both arbitrators viewed my claim through the lens of contract law and found no breach of contract. Neither arbitrator says anything about our trust relationship. [ER-47-52].

---

[8] An express trust is "a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it.". Restatement (Second) of Trusts § 2 (1959); Restatement (Third) of Trusts § 2 (same).

**b. Reversable Error No. 2**

The district court committed reversable error by applying tort law to my federal trust claims, and applying the wrong accrual date to my federal trust claims. (Appellant Opening Brief, Dkt. No. 3.1 at ECF pp. 27-40). Federal courts have long made a distinction between fiduciary relationships governed by trust law and fiduciary relationships governed by tort law. For example, when a federal court performs its fiduciary analysis under § 523(a)(4) of the Bankruptcy Code the federal court looks for express trusts, not to enforce the trusts, but as a step in determining which claims of the bankrupt debtor are dischargeable and which are not. *See In re Honkanen*, 446 B.R. 373, 378-79 (9th Cir. BAP 2011). A funded Exchange Act Rule 15c3-3 "securities account" passes the Ninth Circuit's test for a statute based express trust. (Appellant Opening Brief, Dkt. No. 3.1 at ECF pp. 9, 23-26).

American trust law splits the rights of a beneficiary into two categories: the beneficiary's proprietary (ownership) rights in the corpus of the trust, and the beneficiary's personal claims against the trustee administering the trust. My ownership rights in the corpus of Exchange Act Rule 15c3-3 securities account no. xxxx-6593 are

governed by property law, federal trust law, and the terms of the Rule 15c3-3 trust. (Appellant Opening Brief, Dkt. No. 3.1 at ECF pp. 32-34). My personal claims against the "carrying" stockbroker (trustee) defendant Charles Schwab & Co. are also governed by federal trust law. (Appellant Opening Brief, Dkt. No. 3.1 at ECF pp. 38-40).

"[I]t is a clear error of law to not apply controlling Supreme Court precedent." *Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013). For over two centuries the U.S. Supreme Court has held that the statute of limitations does not run between trustee and *cestui que trust*, so long as the express trust subsists, for the possession of the trustee is the possession of the *cestui que trust* and the trustee holds according to his title. So long as this condition exists, no cause of action has accrued. (Appellant Opening Brief, Dkt. No. 3.1 at ECF pp. 32-34).

Under federal trust law, as interpreted by the U.S. Supreme Court, a statute of limitations does not begin to run in favor of defendant Charles Schwab & Co. until it discharges its duty to account for all the property it is holding in trust for me and distributes to me the entire contents of the subject securities account.

### c. Reversable Error No. 3

The district court committed reversable error by dismissing my lawsuit prior to requiring defendant Charles Schwab & Co. account for and distribute to me the entire contents of Exchange Act Rule 15c3-3 securities account no. xxxx-6593.

The district court had federal question jurisdiction over my federal trust claims. 28 U.S.C. § 1331; 15 U.S.C. § 78aa. The administration and enforcement of trusts is within the historic scope of federal equity jurisdiction.[9]

> It is, however, well settled that a court of chancery, as an incident to its power to enforce trusts, and make those holding a fiduciary relation account, has jurisdiction to compel executors and administrators to account and distribute the assets in their hands.

*Payne v. Hook*, 74 U.S. 425, 431 (1869).

Once the district court acquired subject matter jurisdiction over my Section 15c3 trusts, the court's equity jurisdiction was invoked, and the district court had an obligation to exercise its jurisdiction and

---

[9] *See* Appellant Opening Brief, Dkt. No. 3.1 at ECF p.34 n.22); *Mertens v. Hewitt Associates*, 508 U.S. 248, (1993) ("It is true that, at common law, the courts of equity had exclusive jurisdiction over virtually all actions by beneficiaries for breach of trust."); *Hunter v. United States*, 30 U.S. 173, 188 (1831) ("It is the peculiar province of equity, to compel the execution of trusts.")

see to it that my Rule 15c3-3 trusts were being administered in accordance with the terms of the trusts. (Appellant Opening Brief, Dkt. No. 3.1 at ECF pp. 36-37, 45-46).[10]

"One of the fundamental common-law duties of a trustee is to preserve and maintain trust assets." *Central States Pension Fund v. Central Transport, Inc*., 472 U.S. 559, 572 & n.13 (1985); Restatement (Second), Trusts § 175 (Duty of the trustee to take and keep control of trust property). Exchange Act Rule 15c3-3 codifies that common law duty and tailors it for the stockbroker business. *See* 17 C.F.R. § 240.15c3-3(b), (c) & (d) (customer securities) (e) & (j) (customer cash) [ADD-43-52].

With respect to securities, Exchange Act Rule 15c3-3(b), (c), & (d) require stockbrokers to promptly obtain and maintain physical possession or control of fully paid securities carried by a broker for the account of a cash customer.

---

10 *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given them.); *Silk v. Bond*, 65 F. 4th 445, 448 (9th Cir. 2023) ("As the Supreme Court has reminded us, 'it is most true that this Court will not take jurisdiction if it should not: but it is equally true, that it must take jurisdiction if it should . . . We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.'").

Defendant states in its Answering Brief "Indeed, as TDA's successor, the same Bancorp Shares were transferred to Charles Schwab as the surviving entity.". (Appellee Answering Brief, Dkt. No.8.1 at ECF p. 16). That statement is misleading in several ways. First, it is pure speculation to assume what property was transferred to Charles Schwab & Co. from the previous trustee.

> There is no evidence that "In 2005, [I] purchased 2,420,000 shares of stock in Bancorp International Group, Inc. ("Bancorp")" [ER-8]. It was assumed to be true, <u>but not proved to be true</u>, in my two arbitrations [ER-47], and two SDNY lawsuits [ER-63; ER-71], that shares of Bancorp International Group Inc. were purchased for me in 2005. It was assumed to be true, <u>but not proved to be true</u>, that those shares were being held at the Depository Trust Company (DTC).

Appellant Opening Brief, Dkt. No. 3.1 at ECF p. 30, & ECF pp. 49-50 (global locks)

Second, based on circumstantial evidence, there is a high probability that in June 2023 when Charles Schwab & Co. assumed the office of trustee for my Exchange Act Rule 15c3-3 "securities accounts", not one of my "securities accounts", contained shares of Bancorp International Group Inc.

Start at the beginning: In September 2005 the SEC suspended the buying and selling of shares of Bancorp International Group Inc. for ten (10) days because stockbrokers and market makers had caused

a trainwreck by executing customer orders to buy and sell shares of Bancorp International Group Inc. that the Depository Trust Company (DTC) could not settle. Present day: In 2024 defendant Charles Schwab & Co. would not provide me an accounting or identify for me the name of the entity that holds legal title to the 2,420,000 shares of Bancorp International Group Inc. being credited to my accounts [ER-32-34 at ¶¶ 35-45]. Then, in December 2024 the transfer agent stated to me in an email that zero (0) shares of Bancorp International Group Inc. were at the DTC [ER-34 at ¶ 46].

As I attempt to explain in my Complaint, my theory is that my 2005 offers (to purchase a total of 2,420,000 shares of Bancorp International Group Inc. in exchange for my $17,236.53) were executed but failed to settle and expired as a matter of law forty-five (45) days after my 2005 orders were executed. My theory is that my $17,236.53 (and interest thereon) was transferred to Charles Schwab & Co. in the suspense account it was parked in by the previous stockbrokers in September 2005 when the previous stockbrokers were notified by the SEC of the trainwreck caused by stockbrokers, market makers, and the DTC. I speculated in my January 2025 Complaint that an accounting will show defendant Charles Schwab & Co. is not

holding 2,420,000 shares of Bancorp International Group Inc. for me as it represented to me on my December 2024 account statement, but instead defendant Charles Schwab & Co. is holding my $17,236.53 in trust for me in a suspense account. [ER-27-46 at ¶¶ 47-84, 97-99, 106-109, 113-115, 122-124]. I requested an order directing Charles Schwab & Co. to "recredit back to my securities accounts my $17,236.53, plus interest thereon." [ER-46]. That is not damages. It my property (uninvested cash) that I speculate an accounting will show Defendant is holding in trust for me.[11]

**d. Item No. 12**

In my Opening Brief, I argued the district court abused its discretion by judicially noticing Item No. 12. (Appellant Opening Brief, Dkt. No. 3.1 at ECF pp. 52-55). In its Answering Brief, defendant argues the opposite and states: "Indeed, not only is such information generally known, but the information is contained within

---

[11] My Proposed Amended Complaint (PAC) does not speculate on the results of an accounting, instead, my PAC requests "An order directing Charles Schwab & Co. account for and distribute to me my property in securities Account No. xxxx-6593". My Proposed Amended Complaint (PAC) [ER-16-21] was filed as part of my March 13, 2026 Rule 59 Motion for Reconsideration. (Dkt. No. 39). The district court denied my Rule 59 Motion for Reconsideration on May 7, 2026. [ER-4-6 (Dkt. No. 46)].

documents that have been filed with the SEC – a source whose accuracy cannot reasonably be questioned. As such, the Court should find that there was no abuse of discretion." (Appellee Answering Brief, Dkt. No.8.1 at ECF p. 21).

1. **Not A Fact Generally Known.**

Fed. R. Evid. 201(b)(1) permits a court to judicially notice facts that are "generally known". Item No. 12 does not fall within the fact 'generally known' category of Fed. R. Evid. 201. It might be 'generally known' in California that in 2020 "Charles Schwab" (The Charles Schwab Corporation) acquired "TD Ameritrade". But Appellee Charles Schwab & Co., (the only defendant in my lawsuit), is not The Charles Schwab Corporation (a publicly traded Delaware corporation) that acquired "TD Ameritrade" in 2020.

2. **Did Not Supply The Court Necessary Information.**

The party requesting judicial notice of a fact must provide the court with the necessary information. Fed. R. Evid. 201(c)(2). The party or its lawyer's say-so that "the information is contained within documents that have been filed with the SEC" is not specific enough to satisfy its statutory burden. The district court abused its discretion

by not holding defendant to its statutory burden of supplying the court with the necessary information to judicially notice Item No. 12.

**3. Not A Relevant Fact.**

Judicial notice is a rule of evidence. See Fed. R. Evid. 201. “Irrelevant evidence is not admissible.” Fed. R. Evid. 402. Defendant does not argue that taking judicial notice of Item No. 12 is relevant to any issues decided by the district court. *See Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 991 n. 8 (9th Cir. 2012) (judicial notice denied on relevancy grounds).

**4. Not The Proper Subject For Judicial Notice.**

Fictional corporate events are not the proper subject for judicial notice. I looked at more than a decade of SEC filings, and I looked at the Secretary of State websites for Delaware, New York, Nebraska, Arizona, and California. I found no evidence to support the fact that Appellee/defendant Charles Schwab & Co. a California corporation is the surviving entity of the corporate events in Item No. 12. The district court abused its discretion taking judicial notice of a fictional corporate event.

## CONCLUSION

I respectfully request the court:

1.) Rule that my funded Exchange Act Rule 15c3-3 securities accounts are common law express trusts;

2.) Vacate the district court's March 5, 2026 decision and remand my lawsuit back to the district court for a final accounting and final distribution of the contents of securities account no. xxxx-6593 along with any other relief I am entitled as *cestui que trust*; and

3.) Reverse the court's decision to judicially notice Item No. 12.

Respectfully submitted,

Dated: September 6, 2026 /s/ Jan Harris

Jan Harris,
Pro Se Appellant
101 Aupuni Street, Apt. 420
Hilo, Hawaii 96720
(541) 207-4026
jhk29@hotmail.com

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 26-3263

I am the attorney or self-represented party.

**This brief contains** 6,932 **words,** including ____ words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

- (●) complies with the word limit of Cir. R. 32-1.
- ( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.
- ( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).
- ( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.
- ( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  - [ ] it is a joint brief submitted by separately represented parties.
  - [ ] a party or parties are filing a single brief in response to multiple briefs.
  - [ ] a party or parties are filing a single brief in response to a longer joint brief.
- ( ) complies with the length limit designated by court order dated ____.
- ( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/Jan Harris **Date** 9/6/2026

*(use "s/[typed name]" to sign electronically-filed documents)*